1              IN THE UNITED STATES DISTRICT COURT

2                  WESTERN DISTRICT OF TEXAS

3                       EL PASO DIVISION

4    UNITED STATES OF AMERICA        )    No.  EP-07-CR-1965-PRM
                                     )
5    vs-                             )    El Paso, Texas
                                     )
6    REY ORTIZ _____      )    January 11, 2008

7

8

9

10

11                        GUILTY PLEA

12

13

14    A P P E A R A N C E S:

15    FOR THE GOVERNMENT:   MR. ADRIAN GALLEGOS
                            Assistant United States Attorney
16                          700 East San Antonio, Room 200
                            El Paso, Texas 79901

17

      FOR THE DEFENDANT:    MR. MARGARITO RODRIGUEZ
18                          Assistant Federal Public Defender
                            700 E. San Antonio Street, D-401
19                          El Paso, Texas 79901-7001

20            The above-styled and numbered cause came on for

21    hearing before the Honorable Philip R. Martinez in Courtroom 2,

22    United States Courthouse, El Paso, Texas.

23            Proceedings reported by mechanical shorthand.

24            Transcript produced by computer.

25

1    (MS. R. GRAFFOS-WORRELL INTERPRETED FROM SPANISH TO ENGLISH.)

2              DEPUTY CLERK:  Cause Number EP-07-CR-2966, the

3    United States versus Santos Lopez-Garay.

4              EP-07-CR-2294, the United States versus Roberto Ojeda.

5              EP-07-CR-2377, the United States versus Daniel

6    Contreras.

7              EP-07-CR-2924, the United States versus Jaime Leonel

8    Morales-Espinoza.

9              EP-07-CR-2740, the United States versus Mario

10   Delgado-Martinez.

11             EP-07-CR-1965, the United States versus Rey Ortiz.

12             EP-07-CR-2919, the United States versus Jose Armando

13   Bueno-Cruz.

14             And EP-07-CR-1624, the United States versus Cesar

15   Castillo.

16             Please raise your right hand.

17   (DEFENDANTS SWORN.)

18             DEFENDANT-CONTRERAS:  Yes.

19             DEFENDANT-ORTIZ:  Yes.

20             DEFENDANT-CASTILLO:  Yes.

21             INTERPRETER:  Yes, by all needing the interpreter.

22             THE COURT:  Thank you.  And you may lower your hands.

23             Announcements, please.

24             MR. GALLEGOS:  Good morning, Judge.  Adrian Gallegos

25   for the United States in all cases.  Ready.

1              THE COURT:  Thank you.  Good morning.

2              MR. DEKOATZ:  Good morning, Your Honor.  Matthew

3    Dekoatz for Santos Lopez-Garay.  Ready, sir.

4              THE COURT:  Thank you.  Good morning.

5              MS. BERTON:  Good morning, Your Honor.  Anne Berton on

6    behalf of Roberto Ojeda.  We are not ready, Your Honor.  The

7    marshals took him to the hospital this morning.

8              THE COURT:  Okay.  We'll get that rescheduled.  Was

9    that a previously-scheduled appointment or...

10             MS. BERTON:  It was, Your Honor.  I called the

11   marshals, and they were going to take him this afternoon, but

12   somehow there was a mixup, and the jail took him in the

13   morning, so...

14             THE COURT:  Okay.  Is there a certain day of the week

15   that he doesn't have treatment?

16             MS. BERTON:  Tuesdays and Thursdays he doesn't.  He

17   does go on Monday, Wednesday, and Friday.

18             THE COURT:  Okay.  We will try to get it set for next

19   Tuesday, then.

20             MS. BERTON:  Okay.

21             THE COURT:  You are moving for a pass?

22             MS. BERTON:  Yes, Your Honor.

23             THE COURT:  And, given the unavailability of the

24   Defendant, the time is excludable.  We will set it for next

25   Tuesday, then.

MICHAEL P. NOBLES, CSR

```
 1              MS. BERTON:  Thank you, Your Honor.

 2              THE COURT:  Thank you, Ms. Berton.

 3              MS. BERTON:  May I be excused?

 4              THE COURT:  Yes, ma'am.

 5              MS. SALOME-SMITH:  Good morning.  Kathleen

 6    Salome-Smith appearing on behalf of Daniel Contreras.  We are

 7    also ready to proceed with the plea pursuant to a Plea

 8    Agreement.

 9              THE COURT:  Thank you.  Good morning.

10              MR. CALHOUN:  John Calhoun for Jaime Morales-Espinoza.

11    We're ready.

12              THE COURT:  Is that plea to the Indictment?

13              MR. CALHOUN:  Yes, it is.

14              THE COURT:  Okay.  Thank you.

15              MS. ROMERO-MARTINEZ:  Good morning, Your Honor.  Marie

16    Romero-Martinez for Mr. Delgado-Martinez.  We're ready to plead

17    pursuant to a Plea Agreement.

18              THE COURT:  Thank you.  Good morning to you.

19              MR. TREJO:  Good morning, Your Honor.  Reggie Trejo

20    for Mr. Bueno-Cruz.  We're ready.

21              THE COURT:  Good morning, Mr. Trejo.

22              MR. BAKER:  Good morning, Judge.  Duane Baker here for

23    Mr. Castillo, and we're ready.

24              THE COURT:  Thank you.  Good morning.

25              MR. RODRIGUEZ:  Judge Martinez, Margarito Rodriguez on
```

1    behalf of Mr. Rey Ortiz.  He's here to plead guilty to Count 1

2    of the Indictment pursuant to a Plea Agreement, Your Honor.

3              THE COURT:  Thank you.

4              And are you Mr. Ortiz?

5              DEFENDANT-ORTIZ:  Yes, sir.

6              THE COURT:  Okay.  It's unusual to see you so far

7    away.  But, you know, it's a free country, so you may stand

8    where you wish.

9              Good morning to the eight of you -- or seven of you.

10   You are here because your lawyer has let me know that you would

11   like to enter a plea of guilty to one or to more counts of an

12   Indictment or an Information that has been filed in your case.

13             We'll eventually get to the part of the hearing where

14   you have the opportunity to enter a plea of your choice.  There

15   are numerous questions I have to ask of you before I get to

16   that part of the hearing, because I'm required to determine for

17   myself, based upon the responses you give to questions which I

18   ask, whether I believe your plea is being entered today freely

19   and voluntarily on the one hand, and knowingly on the other.

20   And so I want to get a little bit more familiar with you, in

21   order to make the first determination.

22             And then I'll be providing you with information,

23   hopefully which you are aware of because you have had the

24   chance to visit with your lawyer, and ask if you understand the

25   information I'm sharing with you relative to the consequences

1    of pleading guilty.

2           All of the questions today I'll try to make as simple

3    as possible.  But once in a while they get confusing, or once

4    in a while you may forget it.  And so if you have either

5    forgotten the question, you didn't understand it, you want it

6    repeated, whatever the case may be, let me know.  I want to

7    make sure that when you answer a question it is your truthful

8    response.

9           The only way to get into trouble at today's hearing is

10   if you were to provide me with a response that you knew was

11   incorrect.  Then you would be in violation of the oath that you

12   just took by raising your hand and promising to tell the truth,

13   and you could possibly be prosecuted for another crime.  And

14   so, of course, that would not be in your best interest.

15   Hopefully, if you understand the question you'll provide me

16   with a truthful response, and we'll move on.

17          Part of the hearing this morning is going to be

18   individual in nature.  I'll talk to each of you individually.

19   We'll then get to a part of the hearing where it's easier for

20   me to ask the question once, and then simply call you by your

21   last name and ask for your verbal response.  And when you

22   respond to my questions, whether you are responding in English

23   or in Spanish, please respond loudly enough so that I can hear

24   you.

25          If you are wearing a headset today, you are going to

1    be assisted by Ms. Graffos, who will translate everything that

2    I say in English into Spanish for your benefit, and everything

3    that you say in Spanish into English for the benefit of the

4    record.  And I will need your help.  The first assistance I'm

5    going to need is I'm going to ask that you always respond in

6    Spanish.  Even if you understand a little bit of English, even

7    if you find it easier to simply say yes or no, please respond

8    in Spanish because, that way, Ms. Graffos will be the person

9    who provides the English translation, and my court reporter

10   won't have to be bouncing between you and the court interpreter

11   to figure out who is providing the English response.  So please

12   respond in Spanish.

13          Secondly, once in a while the equipment fails.  And if

14   it does fail at the hearing, and you are unable to hear what is

15   being translated over the earphones, please let me know

16   immediately, so that we can provide you with equipment that

17   works correctly.

18          This is a very important hearing.  It will have

19   consequences in your life.  I want to make sure that each of

20   you understands exactly what is going on at the hearing today.

21          Please do not wait until the end of the hearing to

22   tell me that the headset stopped working, oh, 15 minutes ago,

23   because then I have to start all over again, and it just isn't

24   real efficient.  So if you'll tell me immediately, we'll stop

25   the hearing, and I'll get you some new equipment, and we'll

1    just pick up exactly where we are.

2            Please know you do not have to plead guilty.  Even if

3    you and your lawyer have discussed the case, and even if you

4    were at some point comfortable with the idea of pleading

5    guilty, it is okay if you want to change your mind.  In fact,

6    if you want to change your mind, there is no better time than

7    the present.

8            Mr. Bueno, are you able to hear?

9            DEFENDANT-BUENO:  Yes.

10           THE COURT:  Okay.  Great.

11           If you plead guilty today, and if I accept your plea

12   of guilty, you are forever waiving, or giving up, your right to

13   contest the charges.  That means you will never have a trial,

14   whether it be before a judge or a jury.  So that is important

15   in and of itself.

16           For those of you who plead guilty, and for whom I

17   accept your plea of guilty, the next setting will be your

18   sentencing, and that usually takes place a good 60 to 90 days

19   down the road.

20           In the event that you have a reservation about

21   pleading guilty, you are a little bit uncomfortable, you're not

22   too sure what you want to do, it is probably better, I think,

23   to plead not guilty, to get a trial date, and that will give

24   you a little bit more time to think about what you wish to do.

25           Now, there are deadlines that have to be complied

1    with, so that you can secure the full benefit of acceptance of

2    responsibility.  That's something you and your lawyer can

3    discuss, certainly.  But you should not plead guilty if you

4    have any reservation about pleading guilty.

5         If you do plead not guilty, then the next setting, of

6    course, would be your trial.  And that could be before the

7    judge or the jury, as I explained.

8         In the event that you believe you are innocent, you

9    should never plead guilty.  In the event that you believe you

10   have a defense that you would like a judge or a jury to

11   consider, you should not plead guilty.  The only reason to ever

12   plead guilty is if you are guilty.  I cannot stress that

13   strongly enough.  I've had very good lawyers -- very good

14   lawyers, after the fact, come in and tell me that, "Judge, you

15   know, you can admonish them and you can tell them, but they are

16   ultimately going to do what their attorney says."

17        I am telling you today, do not plead guilty if you are

18   not guilty.  Because if you plead guilty, and if I accept your

19   plea of guilty and we adjourn the hearing today, you walk out

20   of here and I go about my business, and then later tonight or

21   two weeks from now or when you get the sentencing report, or

22   three months from now you want to change your mind and change

23   your plea, it is always possible for your lawyer to file a

24   piece of paper called a motion to withdraw a plea of guilty,

25   but it is a very difficult motion to have granted.

```
 1              So please feel comfortable with what you are doing.

 2    Hopefully, you have had enough time to review the charges, you

 3    have had enough time to visit with your lawyer, you understand

 4    what the Government's evidence is in the case, you understand

 5    what the options are which are available.  Please, please, do

 6    not plead guilty unless you are guilty.

 7              Finally, because this hearing is very important, I do

 8    want you to know that at any time during the hearing you

 9    certainly have the right to visit with your attorney.  If you

10    want to take a break and visit with your attorney in private,

11    that certainly is going to be something that we will

12    accommodate you with.  All you need to do is let your lawyer

13    know.  Your lawyer will bring it to my attention.  I, in turn,

14    will recess your individual hearing, continue with all of the

15    other hearings, hopefully finish those, and then we'll come

16    back and figure out exactly how you wish to proceed.

17              With that, I think I've covered everything that I need

18    to cover at this point.  Let me go ahead and start with some

19    individual questions.  I'll begin over here on my left-hand

20    side.

21              And, sir, are you the Defendant in this case, Santos

22    Lopez-Garay?

23              DEFENDANT-LOPEZ:  Yes.

24              THE COURT:  Mr. Lopez, how old are you, sir?

25              DEFENDANT-LOPEZ:  I'm 43 years old.
```

MICHAEL P. NOBLES, CSR

```
 1              THE COURT:  Are you single, married, or in a
 2   common-law relationship?
 3              DEFENDANT-LOPEZ:  Common-law relationship.
 4              THE COURT:  And, sir, do you have children?
 5              DEFENDANT-LOPEZ:  Yes, one child.
 6              THE COURT:  And what is the age of your child?
 7              DEFENDANT-LOPEZ:  He's four months old.
 8              THE COURT:  How many years of education have you
 9   completed, sir?
10              DEFENDANT-LOPEZ:  Two years.
11              THE COURT:  And where did you go to school?  What
12   state or country?
13              DEFENDANT-LOPEZ:  Tamaulipas, Mexico.
14              THE COURT:  Thank you.  And I'll be back with you in
15   just a little bit.
16              Mr. Contreras, good morning to you.  Are you Daniel
17   Contreras?
18              DEFENDANT-CONTRERAS:  Yes, sir.
19              THE COURT:  And, sir, is that your true and correct
20   and your full and complete name?
21              DEFENDANT-CONTRERAS:  Yes, sir.
22              THE COURT:  You are out on bond.  Let me go ahead and
23   get Mr. Gabaldon to give me a bond report on anyone who is out
24   on bond.
25              PRETRIAL:  Good morning, Your Honor.
```

MICHAEL P. NOBLES, CSR

```
1              THE COURT:  Good morning.
2              PRETRIAL:  Steven Gabaldon here in the case of
3   Mr. Daniel Contreras, Your Honor, and Mr. Cesar Castillo.
4              Mr. Contreras is doing well on bond.  He has no
5   violations.  He did submit a urine specimen the second day that
6   he was released on bond that tested positive for marijuana, but
7   we believe that that was marijuana used prior to his arrest, so
8   that no --
9              THE COURT:  Residual?
10             PRETRIAL:  Yes.
11             THE COURT:  Okay.
12             PRETRIAL:  And Mr. Cesar Castillo has been compliant
13  with all of the conditions, Your Honor.  We recommend that they
14  both be allowed to remain on bond.
15             THE COURT:  Thank you.  I appreciate your help.  You
16  are welcome to stay, but you are free to leave, if you choose
17  to do that.
18             Mr.Contreras, Daniel Contreras, you told me, was your
19  true and correct and your full and complete name, sir?
20             DEFENDANT-CONTRERAS:  Yes, sir.
21             THE COURT:  Mr. Contreras, how old are you?
22             DEFENDANT-CONTRERAS:  30.
23             THE COURT:  Are you single, married, or in a
24  common-law relationship?
25             DEFENDANT-CONTRERAS:  Married.
```

```
1              THE COURT:  And do you have children, sir?
2         DEFENDANT-CONTRERAS:  Two.
3              THE COURT:  And what are the ages of your two
4    children?
5         DEFENDANT-CONTRERAS:  Five and six.
6              THE COURT:  How many years of education have you
7    completed?
8         DEFENDANT-CONTRERAS:  The 10th grade high school.
9              THE COURT:  And where did you attend high school?
10        DEFENDANT-CONTRERAS:  Santa Teresa High School, Santa
11   Teresa, New Mexico.
12             THE COURT:  And have you ever received your GED?
13        DEFENDANT-CONTRERAS:  No.
14             THE COURT:  And, sir, are you a citizen of the
15   United States?
16        DEFENDANT-CONTRERAS:  Yes, sir.
17             THE COURT:  Okay.  And I'll be back with you in just a
18   little bit.
19             Mr. Morales, good morning to you.  Are you Jaime
20   Leonel Morales-Espinoza?
21        DEFENDANT-MORALES:  Yes.
22             THE COURT:  Mr. Morales, is that your true and correct
23   and your full and complete name?
24        DEFENDANT-MORALES:  Yes.
25             THE COURT:  Mr. Morales, how old are you, sir?
```

```
1              DEFENDANT-MORALES:  31.

2              THE COURT:  Are you single, married, or in a

3     common-law relationship?

4              DEFENDANT-MORALES:  Divorced.

5              THE COURT:  Do you have children?

6              DEFENDANT-MORALES:  Two.

7              THE COURT:  What are the ages of your two children?

8              DEFENDANT-MORALES:  12 and 7.

9              THE COURT:  And do your children reside with you or

10    with their mother?

11             DEFENDANT-MORALES:  With their mother.

12             THE COURT:  How many years of education have you

13    completed, sir?

14             DEFENDANT-MORALES:  12.

15             THE COURT:  Mr. Morales, where did you go to school?

16             DEFENDANT-MORALES:  Chihuahua.

17             THE COURT:  And is that Chihuahua City in Chihuahua,

18    the state of Chihuahua?

19             DEFENDANT-MORALES:  Correct.

20             THE COURT:  Okay.  And, sir, are you a citizen of the

21    United States?

22             DEFENDANT-MORALES:  No.

23             THE COURT:  Thank you.  And I'll be back on your case

24    in just a little bit.

25             Mr. Delgado, are you Mario Delgado-Martinez?
```

```
1              DEFENDANT-DELGADO:  Yes.

2              THE COURT:  Is that your true and correct and your

3    full and complete name?

4              DEFENDANT-DELGADO:  Yes.

5              THE COURT:  Mr. Delgado, how old are you?

6              DEFENDANT-DELGADO:  38.

7              THE COURT:  Are you single, married, or in a

8    common-law relationship?

9              DEFENDANT-DELGADO:  Divorced.

10             THE COURT:  And do you have children?

11             DEFENDANT-DELGADO:  Yes.

12             THE COURT:  How many do you have, sir?

13             DEFENDANT-DELGADO:  Four.

14             THE COURT:  What are the ages of your four children?

15             DEFENDANT-DELGADO:  I have two girls who are 9 years

16   old.  They twins.  One is 20, and one is 18 years old.

17             THE COURT:  How many years of education have you

18   completed, sir?

19             DEFENDANT-DELGADO:  Six.

20             THE COURT:  Where did you attend your classes?

21             DEFENDANT-DELGADO:  In Juarez, Chihuahua.

22             THE COURT:  And, sir, are you a citizen of the

23   United States?

24             DEFENDANT-DELGADO:  No.

25             THE COURT:  And the children, do they reside with you
```

1    or with their mother?

2             DEFENDANT-DELGADO:  With their mother.

3             THE COURT:  Thank you.  I'll be back on your case.

4             Mr. Ortiz, are you Rey Ortiz?

5             DEFENDANT-ORTIZ:  Yes, sir.

6             THE COURT:  And is that your true and correct and your

7    full and complete name?

8             DEFENDANT-ORTIZ:  Yes, sir.

9             THE COURT:  Mr. Ortiz, how old are you, sir?

10            DEFENDANT-ORTIZ:  33.

11            THE COURT:  And, let's see.  Are you single, married,

12   or in a common-law relationship?

13            DEFENDANT-ORTIZ:  I'm common-law.

14            THE COURT:  Okay.  And do you have children?

15            DEFENDANT-ORTIZ:  I have one that is mine, and then I

16   have four with her.

17            THE COURT:  Okay.  And the one that's yours is how

18   old?

19            DEFENDANT-ORTIZ:  She's 15.

20            THE COURT:  15.  And then you have four with the lady

21   with whom you have a common-law relationship.  And what are --

22   how old are -- what are the ages of those four children?

23            DEFENDANT-ORTIZ:  25, 22, 15, and 14.

24            THE COURT:  And the 15-year-old, does that child

25   reside with her mother?

MICHAEL P. NOBLES, CSR

```
1              DEFENDANT-ORTIZ:  Yeah, in Phoenix.

2              THE COURT:  Okay.  And the other four reside with you

3    and your common-law spouse?

4              DEFENDANT-ORTIZ:  Yes, sir.

5              THE COURT:  Okay.  How many years of education have

6    you completed, sir?

7              DEFENDANT-ORTIZ:  11.

8              THE COURT:  Where did you attend your classes?

9              DEFENDANT-ORTIZ:  I went to Bowie High School.

10             THE COURT:  And...

11             DEFENDANT-ORTIZ:  I have a GED.

12             THE COURT:  You do have a GED?  Okay.  Great.

13             Sir, are you a citizen of the United States?

14             DEFENDANT-ORTIZ:  Yes, sir.

15             THE COURT:  Okay.  Thank you.  And I'll be back with

16   you in just a little bit.

17             Mr. Bueno, good morning.  Are you Jose Armando

18   Bueno-Cruz?

19             DEFENDANT-BUENO:  Yes.

20             THE COURT:  Mr. Bueno, how old are you?

21             DEFENDANT-BUENO:  37.

22             THE COURT:  Are you single, married, or in a

23   common-law relationship?

24             DEFENDANT-BUENO:  Married.

25             THE COURT:  Do you have children?
```

```
1              DEFENDANT-BUENO:  Three.
2              THE COURT:  And the ages of your children?
3              DEFENDANT-BUENO:  10, 14, and 17.
4              THE COURT:  How many years of education have you
5      completed, sir?
6              DEFENDANT-BUENO:  12.
7              THE COURT:  Where did you attend your classes?
8              DEFENDANT-BUENO:  Ciudad Juarez.
9              THE COURT:  And, sir, are you a citizen of the
10     United States?
11             DEFENDANT-BUENO:  No.
12             THE COURT:  Thank you.  And I'll be back with you in
13     just a little bit.
14             Mr. Castillo, good morning.  Are you Cesar Castillo?
15             DEFENDANT-CASTILLO:  Yes, sir.
16             THE COURT:  Is that your true and correct and your
17     full and complete name?
18             DEFENDANT-CASTILLO:  Yes, sir.
19             THE COURT:  Mr. Castillo, how old are you, sir?
20             DEFENDANT-CASTILLO:  30.
21             THE COURT:  Are you single, married, or in a
22     common-law relationship?
23             DEFENDANT-CASTILLO:  Single, sir.
24             THE COURT:  Do you have children?
25             DEFENDANT-CASTILLO:  No, sir.
```

| | |
|---|---|
| 1 | THE COURT:  How many years of education have you |
| 2 | completed? |
| 3 | DEFENDANT-CASTILLO:  12. |
| 4 | THE COURT:  Where did you go to school? |
| 5 | DEFENDANT-CASTILLO:  San Elizario High School. |
| 6 | THE COURT:  Do you have any post high school |
| 7 | education?  Community college, training courses? |
| 8 | DEFENDANT-CASTILLO:  One year of community college. |
| 9 | THE COURT:  Okay.  And are you a citizen of the |
| 10 | United States? |
| 11 | DEFENDANT-CASTILLO:  Yes, sir. |
| 12 | THE COURT:  Okay. |
| 13 | All right.  Let me switch gears.  I'm going to start |
| 14 | with the questions where I ask a question, and then I'll call |
| 15 | you by your last name.  And usually I'll go left to right or |
| 16 | right to left.  The only favor I would ask of you is that you |
| 17 | be careful that you don't simply repeat the answer that the |
| 18 | person standing next to you just provided.  Make sure that the |
| 19 | answer that you provide to me is a truthful answer in your |
| 20 | case. |
| 21 | Again, if you have questions about the question |
| 22 | itself, you can stop me and ask me to repeat.  I'll be glad to |
| 23 | repeat it, rephrase it, or try to make it a little bit clearer |
| 24 | for you. |
| 25 | Let's talk about your health at this time.  Are you in |

```
1    good physical health at this time?

2              Mr. Castillo?

3              DEFENDANT-CASTILLO:  Yes, sir.

4              THE COURT:  Mr. Bueno?

5              DEFENDANT-BUENO:  Yes.

6              THE COURT:  Mr. Ortiz?

7              DEFENDANT-ORTIZ:  Yes, sir.

8              THE COURT:  Mr. Delgado?

9              DEFENDANT-DELGADO:  Yes, sir.

10             THE COURT:  Mr. Morales?

11             DEFENDANT-MORALES:  Yes, sir.

12             THE COURT:  Mr. Contreras?

13             DEFENDANT-CONTRERAS:  Yes, sir.

14             THE COURT:  Mr. Lopez?

15             DEFENDANT-LOPEZ:  Yes, sir.

16             THE COURT:  Let's talk about your mental health.  Are

17   you in good mental health at this time?

18             Mr. Lopez?

19             DEFENDANT-LOPEZ:  Yes, sir.

20             THE COURT:  Mr. Contreras?

21             DEFENDANT-CONTRERAS:  Yes, sir.

22             THE COURT:  Mr. Morales?

23             DEFENDANT-MORALES:  Yes.

24             THE COURT:  Mr. Delgado?

25             DEFENDANT-DELGADO:  Yes.
```

```
 1              THE COURT:  Mr. Ortiz?

 2              DEFENDANT-ORTIZ:  Yes, sir.

 3              THE COURT:  Mr. Bueno?

 4              DEFENDANT-BUENO:  Yes, sir.

 5              THE COURT:  Mr. Castillo?

 6              DEFENDANT-CASTILLO:  Yes, sir.

 7              THE COURT:  As you stand here in court today, are you

 8   presently under the influence of any kind of drug or alcohol or

 9   medication?

10              Mr. Castillo?

11              DEFENDANT-CASTILLO:  No, sir.

12              THE COURT:  Mr. Bueno?

13              DEFENDANT-BUENO:  No, sir.

14              THE COURT:  Mr. Ortiz?

15              DEFENDANT-ORTIZ:  No, sir.

16              THE COURT:  Mr. Delgado?

17              DEFENDANT-DELGADO:  No, sir.

18              THE COURT:  Mr. Morales?

19              DEFENDANT-MORALES:  No.

20              THE COURT:  Mr. Contreras?

21              DEFENDANT-CONTRERAS:  No, sir.

22              THE COURT:  Mr. Lopez?

23              DEFENDANT-LOPEZ:  No.

24              THE COURT:  Have you ever been treated for a

25   dependency to any kind of narcotic drug in the past, or any
```

```
 1    kind of substance such as alcohol.

 2              Mr. Lopez?

 3              DEFENDANT-LOPEZ:  No.

 4              THE COURT:  Mr. Contreras?

 5              DEFENDANT-CONTRERAS:  No, sir.

 6              THE COURT:  Mr. Morales?

 7              DEFENDANT-MORALES:  No, sir.

 8              THE COURT:  Mr. Delgado?

 9              DEFENDANT-DELGADO:  No, sir.

10              THE COURT:  Mr. Ortiz?

11              DEFENDANT-ORTIZ:  No, sir.

12              THE COURT:  Mr. Bueno?

13              DEFENDANT-BUENO:  No, sir.

14              THE COURT:  Mr. Castillo?

15              DEFENDANT-CASTILLO:  No, sir.

16              THE COURT:  Have you ever been treated by a

17    psychiatrist, a psychologist, or a mental health counselor in

18    the past?

19              Mr. Castillo?

20              DEFENDANT-CASTILLO:  No, sir.

21              THE COURT:  Mr. Bueno?

22              DEFENDANT-BUENO:  No, sir.

23              THE COURT:  Mr. Ortiz?

24              DEFENDANT-ORTIZ:  No, sir.

25              THE COURT:  Mr. Delgado?
```

```
 1              DEFENDANT-DELGADO:  No, sir.

 2              THE COURT:  Mr. Morales?

 3              DEFENDANT-MORALES:  No, sir.

 4              THE COURT:  Mr. Contreras?

 5              DEFENDANT-CONTRERAS:  No, sir.

 6              THE COURT:  Mr. Lopez?

 7              DEFENDANT-LOPEZ:  Yes, sir.

 8              THE COURT:  And, Mr. Lopez, when did you receive that

 9    treatment, sir?

10              DEFENDANT-LOPEZ:  About six months ago.

11              THE COURT:  And were you hospitalized at the time or

12    were these conferences you had in an office?

13              DEFENDANT-LOPEZ:  Conferences in an office.

14              THE COURT:  And were you ever provided with a

15    diagnosis by the mental health provider?

16              DEFENDANT-LOPEZ:  Not yet.

17              THE COURT:  Okay.  If mental health treatment is still

18    available, would you like to take part in that?

19              DEFENDANT-LOPEZ:  Yes.

20              THE COURT:  Have you ever had to take medication as a

21    result of any of the mental health treatment you received?

22              DEFENDANT-LOPEZ:  Yes.

23              THE COURT:  Do you know the name of the medication by

24    chance?

25              DEFENDANT-LOPEZ:  No, I don't know what they are
```

1    called.

2              THE COURT:  Were you ever told that you were suffering

3    from anxiety or depression?

4              DEFENDANT-LOPEZ:  Yes.  Depression, anxiety.

5              THE COURT:  And was that the result of a certain

6    incident, or was that something that built up over time?

7              DEFENDANT-LOPEZ:  Something had built up across time.

8              THE COURT:  Have you had any difficulty communicating

9    with your lawyer in this case?

10             DEFENDANT-LOPEZ:  No.

11             THE COURT:  Have you understood the nature of the

12   charges that are pending in your case?

13             DEFENDANT-LOPEZ:  Yes, sir.

14             THE COURT:  Have you understood the options you have

15   available to you in responding to those charges?

16             DEFENDANT-LOPEZ:  Yes.

17             THE COURT:  Do you believe that you are mentally

18   competent to be able to participate in today's hearing and to

19   enter a plea in this case?

20             DEFENDANT-LOPEZ:  Today, yes.

21             THE COURT:  Well, I'm glad I got you on a good day.

22   But, generally, are you feeling okay?

23             DEFENDANT-LOPEZ:  Well, certain times I'm a little

24   depressed.

25             THE COURT:  Okay.  But, right now, you understand the

1    questions that I'm asking you?

2              DEFENDANT-LOPEZ:  Perfectly.

3              THE COURT:  You are sure about your desire to enter a

4    plea in this case?

5              DEFENDANT-LOPEZ:  Yes, sir.

6              THE COURT:  Okay.  And you have had plenty of time to

7    visit with your lawyer?

8              DEFENDANT-LOPEZ:  Yes, sir.

9              THE COURT:  Okay.  Thank you.

10             Is there any reservation -- well, let me ask everyone

11   else the very same question I just asked Mr. Lopez.

12             Do you believe that you are mentally able to

13   participate in today's hearing and enter a plea?

14             Mr. Contreras?

15             DEFENDANT-CONTRERAS:  Yes, Your Honor.

16             THE COURT:  Mr. Morales?

17             DEFENDANT-MORALES:  Yes.

18             THE COURT:  Mr. Delgado?

19             DEFENDANT-DELGADO:  Yes.

20             THE COURT:  Mr. Ortiz?

21             DEFENDANT-ORTIZ:  Yes, sir.

22             THE COURT:  Mr. Bueno?

23             DEFENDANT-BUENO:  Yes, sir.

24             THE COURT:  Mr. Castillo?

25             DEFENDANT-CASTILLO:  Yes, sir.

1          THE COURT:  Okay.

2          Any reservations on the part of the attorneys with

3    respect to the competency of their client?

4          Mr. Baker?

5          MR. BAKER:  No, Your Honor.

6          THE COURT:  Mr. Trejo?

7          MR. TREJO:  No, Your Honor.

8          THE COURT:  Mr. Rodriguez?

9          MR. RODRIGUEZ:  No, Your Honor.

10         THE COURT:  Ms. Romero-Martinez?

11         MS. ROMERO-MARTINEZ:  No, Your Honor.

12         THE COURT:  Mr. Calhoun?

13         MR. CALHOUN:  No, Your Honor.

14         THE COURT:  Ms. Salome-Smith?

15         MS. SALOME-SMITH:  No, Your Honor.

16         THE COURT:  Mr. Dekoatz?

17         MR. DEKOATZ:  After the very astute questioning of the

18    trial court, I'm not really sure, Judge.  The only reason I say

19    that is because I'm doing an appeal right now, and the

20    Defendant was way over -- all over the place on the record.  So

21    now he's claiming I'm ineffective for failing to get him an

22    exam.

23         And, even though I believe my client is competent

24    right now, I don't want to end up doing the same thing that I'm

25    writing about on this appeal.  So I believe he's competent, but

1    out of the abundance of caution, if the Court believes that it

2    would be better to have him examined, Judge, out of the

3    abundance of caution, that's fine.  But I do believe he's

4    competent today.  I just don't want to get nailed on a writ for

5    not moving forward after he has answered your questions certain

6    ways, Judge.

7           Thank you.

8           THE COURT:  Well, as I understand your comment, you

9    are not moving for it.  Is that right?

10           MR. DEKOATZ:  Well, I'm not, but I'm trying to pass

11   the buck back to the Court.

12           THE COURT:  It doesn't stick real well, but you can

13   try.

14           MR. DEKOATZ:  Yes, sir.

15           THE COURT:  Mr. Gallegos, do you have any information

16   in your file that would give us a concern about the competency

17   of any of defendants?

18           MR. GALLEGOS:  No to all, Your Honor.

19           THE COURT:  Mr. Lopez, your lawyer, being the very

20   bright lawyer that he is, is concerned, given the information

21   that you provided to me about suffering periods of depression,

22   and has suggested that perhaps one of the things we might wish

23   to do is to have you visit with a doctor to make sure that you

24   are understanding everything that is going on and that you are

25   able to make a decision that is an informed decision in this

1    case.

2           Do you believe that you need to see a doctor so that

3    your lawyer and the Government and the Court can be fully

4    satisfied that you are, in fact, able to continue with this

5    hearing today?

6           DEFENDANT-LOPEZ:  I would like to see a doctor so we

7    can all be aware and fully satisfied that everything is okay.

8           THE COURT:  Okay.  And, in light of that, do the

9    spirits move you to file a motion for a competency exam?

10          MR. DEKOATZ:  If you would please grant me leave, out

11   of an abundance of caution.  I'm really not trying to waste

12   your time, Your Honor.

13          THE COURT:  No, I understand.  That's fine.  You know,

14   I'll be around for a long time, hopefully.  So we'll be glad to

15   recess on this case.

16          Mr. Lopez, I'm going to go ahead and schedule a

17   doctor's appointment, hopefully with Dr. Briones, who is a

18   psychiatrist and fine doctor and gentleman, and he'll visit

19   with you and provide your lawyer and Mr. Gallegos and the Court

20   with a report based upon the evaluation.  And, if he says

21   everything is okay, then we will go ahead and continue with

22   this hearing on another day, as soon as we get that report.

23   Okay?

24          We are in recess.  Mr. Lopez, you can go ahead and

25   have a seat in the jury box, if you want to walk this way.

MICHAEL P. NOBLES, CSR

```
 1              Mr. Dekoatz, you are excused, if you wish to be.

 2              MR. DEKOATZ:  Have a good weekend, sir.

 3              THE COURT:  Thank you.  You do the same.

 4              Mr. Velez, let me give you this.

 5              Are you fully satisfied with all of the assistance

 6      that you have received from your lawyer?

 7              Mr. Contreras?

 8              DEFENDANT-CONTRERAS:  Yes, sir.

 9              THE COURT:  Mr. Morales?

10              DEFENDANT-MORALES:  Yes.

11              THE COURT:  Mr. Delgado?

12              DEFENDANT-DELGADO:  Yes.

13              THE COURT:  Mr. Ortiz?

14              DEFENDANT-ORTIZ:  Yes, sir.

15              THE COURT:  Mr. Bueno?

16              DEFENDANT-BUENO:  Yes, sir.

17              THE COURT:  Mr. Castillo?

18              DEFENDANT-CASTILLO:  Yes, sir.

19              THE COURT:  Do you have any complaints or concerns

20      about anything that your lawyer has done or failed to do?

21              Mr. Castillo?

22              DEFENDANT-CASTILLO:  No, sir.

23              THE COURT:  Mr. Bueno?

24              DEFENDANT-BUENO:  No.

25              THE COURT:  Mr. Ortiz?
```

```
1              DEFENDANT-ORTIZ:  No, sir.

2              THE COURT:  Mr. Delgado?

3              DEFENDANT-DELGADO:  No, sir.

4              THE COURT:  Mr. Morales?

5              DEFENDANT-MORALES:  No, sir.

6              THE COURT:  Mr. Contreras?

7              DEFENDANT-CONTRERAS:  Not at all, sir.

8              THE COURT:  Has anybody forced you to enter a plea of

9     guilty in your case against your will?

10             Mr. Contreras?

11             DEFENDANT-CONTRERAS:  No, sir.

12             THE COURT:  Mr. Morales?

13             DEFENDANT-MORALES:  No.

14             THE COURT:  Mr. Delgado?

15             DEFENDANT-DELGADO:  No.

16             THE COURT:  Mr. Ortiz?

17             DEFENDANT-ORTIZ:  No, sir.

18             THE COURT:  Mr. Bueno?

19             DEFENDANT-BUENO:  No, sir.

20             THE COURT:  Mr. Castillo?

21             DEFENDANT-CASTILLO:  No, sir.

22             THE COURT:  Has anybody threatened you or put pressure

23     on you in order to get you to plead guilty this morning?

24             Mr. Castillo?

25             DEFENDANT-CASTILLO:  No, sir.
```

```
 1            THE COURT:  Mr. Bueno?

 2            DEFENDANT-BUENO:  No.

 3            THE COURT:  Mr. Ortiz?

 4            DEFENDANT-ORTIZ:  No, sir.

 5            THE COURT:  Mr. Delgado?

 6            DEFENDANT-DELGADO:  No, sir.

 7            THE COURT:  Mr. Morales?

 8            DEFENDANT-MORALES:  No, sir.

 9            THE COURT:  Mr. Contreras?

10            DEFENDANT-CONTRERAS:  No, sir.

11            THE COURT:  Is it your intention a little bit later

12    on, when I ask what you wish to plead, is it your intention to

13    enter whatever plea you enter at the time freely and

14    voluntarily today?

15            Mr. Contreras?

16            DEFENDANT-CONTRERAS:  Yes, sir.

17            THE COURT:  Mr. Morales?

18            DEFENDANT-MORALES:  Yes.

19            THE COURT:  Mr. Delgado?

20            DEFENDANT-DELGADO:  Yes.

21            THE COURT:  Mr. Ortiz?

22            DEFENDANT-ORTIZ:  Yes, sir.

23            THE COURT:  Mr. Bueno?

24            DEFENDANT-BUENO:  Yes, sir.

25            THE COURT:  Mr. Castillo?
```

1            DEFENDANT-CASTILLO:  Yes, sir.

2            THE COURT:  I'm required to review a few things about

3    the offense that I understand you are entering a plea to in

4    your case with you.  The first thing I'll do is review what I

5    refer to as the elements of the offense.  Elements of the

6    offense are those things that the Government has to prove

7    beyond a reasonable doubt before you can ever be convicted of

8    the crime.

9            And I'm going to start with Mr. Castillo and

10   Mr. Morales.  Both of you stand charged in Count 2 of your

11   respective Indictments with the crime that we refer to

12   generally as possession of a controlled substance with the

13   intent to distribute.

14            In order to be convicted of that crime, the following

15   elements are required to be proven beyond a reasonable doubt:

16            That you knowingly possessed a controlled substance.

17            That you possessed that substance with the intent to

18   distribute it.

19            And that the controlled substance in the case

20   involving Mr. Morales was marijuana.

21            Do you understand those elements that are required to

22   be proven in order to be convicted of Count 2 in your

23   Indictment, Mr. Morales?

24            DEFENDANT-MORALES:  Yes.

25            THE COURT:  In your case, Mr. Castillo, it is a

1   different controlled substance.  It is alleged to be cocaine,

2   and it is alleged to have a weight of at least 5 kilograms.

3           With those two additional elements, do you understand

4   all of the elements required to be proven before you can be

5   convicted of a crime in Count 2 of the Indictment?

6           DEFENDANT-CASTILLO:  Yes, sir.

7           THE COURT:  Now, let me speak to Mr. Bueno, Mr. Ortiz,

8   Mr. Delgado, and Mr. Morales.  Each one of you stands charged

9   in Count 1 of your Indictment with the crime of importation of

10  a controlled substance.

11          In order to be convicted of that offense the

12  Government has to prove the following beyond a reasonable

13  doubt:

14          That you knowingly or intentionally brought a quantity

15  of a controlled substance into the United States from a place

16  outside of the United States.

17          That you knew what you were bringing in, or had a high

18  suspicion that what you were bringing in was a controlled

19  substance or an illegal substance.

20          That you knew that the substance would, in fact, enter

21  into the United States.

22          And, in each of the cases, that the controlled

23  substance that is alleged in the count of the Indictment is

24  marijuana.

25          Those are the elements required to be proven beyond a

```
 1    reasonable doubt before you can be convicted of the crime of
 2    importation of a controlled substance.
 3              Do you understand those elements?
 4              Mr. Morales?
 5              DEFENDANT-MORALES:  Yes, sir.
 6              THE COURT:  Mr. Delgado?
 7              DEFENDANT-DELGADO:  Yes.
 8              THE COURT:  Mr. Ortiz?
 9              DEFENDANT-ORTIZ:  Yes, sir.
10              THE COURT:  And on your case there is one additional
11    requirement.  They have to show that it was at least 50
12    kilograms of marijuana.
13              Do you understand that as well, Mr. Ortiz?
14              DEFENDANT-ORTIZ:  They have to look at it, or what you
15    mean?
16              THE COURT:  They have to show that -- they would have
17    to prove that the weight was at least 50 kilograms or more.
18              DEFENDANT-ORTIZ:  Yeah.  Yeah.  Oh, okay.
19              THE COURT:  You understand that is one of the things
20    they would have to prove?
21              DEFENDANT-ORTIZ:  Yes, sir.
22              THE COURT:  Okay.
23              And in your case, Mr. Bueno, based on the Indictment,
24    they would have to show that the weight was at least 100
25    kilograms or more of marijuana.
```

1          Do you understand that, sir?

2          DEFENDANT-BUENO:  Yes, sir.

3          THE COURT:  In your case, Mr. Contreras, you are

4    pleading guilty to a charge that is in an Information,

5    apparently.  First, I'm going to show you a document that is

6    entitled "Waiver," and ask if this is your signature.

7          DEFENDANT-CONTRERAS:  Yes, sir, it is.

8          THE COURT:  Did you sign this document freely and

9    voluntarily?

10         DEFENDANT-CONTRERAS:  Yes, I did.

11         THE COURT:  By signing this document, you are allowing

12   the Court to entertain a plea to a charge in an Information,

13   even though no Indictment in the case has been presented.  That

14   means the Grand Jury hasn't had a chance to review the

15   evidence, to decide whether or not you should be charged with

16   that.

17         Are you waiving that right to have it presented and

18   considered by a Grand Jury freely and voluntarily?

19         DEFENDANT-CONTRERAS:  Yes, sir, I am.

20         THE COURT:  And do you concur in your client's waiver,

21   Ms. Salome-Smith?

22         MS. SALOME-SMITH:  I do, Your Honor.

23         THE COURT:  You stand charged by way of Information

24   with the offense of misprision of a felony.  To be convicted of

25   that crime, Mr. Contreras, the following elements are required

1  to be proven beyond a reasonable doubt:

2          That you had actual knowledge of the commission of a

3  felony, that is, conspiracy to possess with the intent to

4  distribute a controlled substance, specifically, 5 kilograms or

5  more of marijuana, and wilfully concealed the information.

6          That you did fail to notify authorities as soon as

7  possible, that authority indicating a federal judge or some

8  other federal, civil, or military authority, such as a Federal

9  Grand Jury, Secret Service agent, or FBI.

10          And that you did an affirmative act to conceal the

11  crime.

12          Do you understand -- and that a felony was, in fact,

13  committed, as charged in the Indictment in the case.

14          Do you understand those elements?

15          DEFENDANT-CONTRERAS:  Yes, sir, I do.

16          THE COURT:  The next thing I'll discuss with you is

17  what the statutory maximum penalty is.  Basically, this is the

18  worst possible thing that may occur if you plead guilty, and if

19  I accept your plea of guilty, in terms of the length of

20  imprisonment, the size of the fine, supervised release.  And so

21  I'll talk about the term of imprisonment first.

22          Basically, Mr. Contreras, the Court would never be

23  able to impose a sentence in excess of three years, in your

24  case.

25          Do you understand that, sir?

1          DEFENDANT-CONTRERAS:  Yes, sir, I do.

2          THE COURT:  Mr. Morales, the Court could never

3    imprison you for more than five years, in your case.

4          Do you understand that?

5          DEFENDANT-MORALES:  Yes.

6          THE COURT:  Mr. Delgado, in your case, the Government

7    has filed an Information.  And, in that information, they are

8    alleging that you have a prior drug-related conviction.

9    Specifically, they allege that you were convicted of the crime

10   of possession of marijuana with the intent to distribute, which

11   conviction was filed in the United States District Court for

12   the District of New Mexico, in the cause number listed in the

13   Information.

14         At this time, do you want to affirm or do you want to

15   deny that prior conviction, sir?

16         DEFENDANT-DELGADO:  I affirm.

17         THE COURT:  I'm also required to tell you that, in the

18   event that you wish to challenge the conviction, you need to do

19   so before the sentencing.  Otherwise, you will be forever

20   barred from doing so.

21         Do you understand that, sir?

22         DEFENDANT-DELGADO:  That's fine.

23         THE COURT:  In light of the Information, the longest

24   possible sentence the Court could impose would be a period of

25   imprisonment that could not exceed 30 years -- I'm sorry -- 10

1    years.

2              Do you understand that?

3              DEFENDANT-DELGADO:  Yes.

4              THE COURT:  And, Mr. Ortiz, in your case, there is

5    also an Information filed.  Specifically, it is alleged that

6    you were convicted of importing marijuana out of the Court in

7    the Western District, in Cause Number EP-01-CR-1149, before a

8    Judge Prado, it looks like, back in September of 2001.

9              At this time, do you wish to affirm or to deny that

10   prior conviction?

11             DEFENDANT-ORTIZ:  Yes, sir, I will affirm.

12             THE COURT:  And I'm also required to let you know that

13   if at any point you want to challenge it, that you would be

14   required to do so before the sentencing, or you will waive your

15   right to do so.

16             Do you understand that?

17             DEFENDANT-ORTIZ:  Yes, sir.

18             THE COURT:  In light of the Information that was filed

19   alleging the prior conviction, the Court could never imprison

20   you in this case for more than 30 years.

21             Do you understand that?

22             DEFENDANT-ORTIZ:  Yes, sir.

23             THE COURT:  Mr. Bueno, in your case, there is a

24   minimum mandatory.  That means that the Court will be required

25   to assess a sentence of 5 years at the lowest end, and it could

1    never be higher than 40 years.

2              Do you understand that, sir?

3              DEFENDANT-BUENO:  Yes, sir.

4              THE COURT:  And in your case, Mr. Castillo, there is

5    also a minimum mandatory.  That would be 10 years, and it could

6    be imprisonment up to life.

7              Do you understand that?

8              DEFENDANT-CASTILLO:  Yes, sir.

9              THE COURT:  In each of the cases the Court is also

10   authorized to impose a fine.  Whether I do so at sentencing

11   will depend on information that I don't have today, but I'll

12   tell you what the highest possible fine could be.

13             In your case, Mr. Castillo, I could never impose a

14   fine that exceeded $4 million.

15             Do you understand that?

16             DEFENDANT-CASTILLO:  Yes, sir.

17             THE COURT:  Mr. Bueno, it could never exceed $2

18   million in your case, as well as Mr. Ortiz'.

19             Do you know that, Mr. Bueno?

20             DEFENDANT-BUENO:  Yes, sir.

21             THE COURT:  Mr. Ortiz?

22             DEFENDANT-ORTIZ:  Yes, sir.

23             THE COURT:  Mr. Delgado, in your case, the fine could

24   never exceed half a million dollars, $500,000.

25             Do you understand that, sir?

1           DEFENDANT-DELGADO:  Yes.

2           THE COURT:  And, Mr. Morales and Mr. Contreras, the

3     fine could never exceed $250,000 in your cases.

4           Do you understand that, Mr. Morales?

5           DEFENDANT-MORALES:  Yes, sir.

6           THE COURT:  And, Mr. Contreras?

7           DEFENDANT-CONTRERAS:  Yes, sir.

8           THE COURT:  The Court could also require that you pay

9     a sum of money in addition to any fine the Court may impose.

10    And that sum of money is limited by statute to no more than

11    $100 per count of conviction.  That money goes to the Crime

12    Victims Fund.  We refer to it generally as a Special

13    Assessment.

14          Do you understand that you would possibly be

15    responsible for paying a sum up to that amount per count of

16    conviction?  That basically means, in your case, Mr. Morales,

17    since you're pleading to two counts, it could never exceed $200

18    in the aggregate.

19          All of the others appear to be a one-count conviction.

20          Do you understand that?

21          Mr. Castillo?

22          DEFENDANT-CASTILLO:  Yes, sir.

23          THE COURT:  Mr. Bueno?

24          DEFENDANT-BUENO:  Yes.

25          THE COURT:  Mr. Ortiz?

1          DEFENDANT-ORTIZ:  Yes, sir.

2          THE COURT:  Mr. Delgado?

3          DEFENDANT-DELGADO:  Yes, sir.

4          THE COURT:  Mr. Morales?

5          DEFENDANT-MORALES:  Yes, sir.

6          THE COURT:  Mr. Contreras?

7          DEFENDANT-CONTRERAS:  Yes, sir.

8          THE COURT:  In each case, the Court is also authorized

9  to place you on supervised release.  The period of supervision

10  in the federal system actually begins upon the completion of

11  any prison sentence that may be required.  It would begin on

12  the date of release, and it would continue for the length of

13  time that is imposed at your sentencing date.

14          How long you can be placed on supervision depends on

15  the statute, and that is what I'm going to provide to you.  As

16  long as you complied with all the terms and conditions, the

17  rules that I impose at the time that you are sentenced while on

18  supervised release, you would never have to come back to court.

19  And, eventually, that time would lapse and you would no longer

20  owe the obligation of complying with those terms and

21  conditions.

22          In your case, Mr. Castillo, there is a five-year

23  minimum period of supervision, but it could be up to the rest

24  of your life.

25          Do you understand that, sir?

MICHAEL P. NOBLES, CSR

1          DEFENDANT-CASTILLO:  Yes, sir.

2          THE COURT:  Mr. Bueno, in your case, it is a four-year

3   minimum period, and it could also be up to the rest of your

4   life.

5          Do you understand that?

6          DEFENDANT-BUENO:  Yes, sir.

7          THE COURT:  Mr. Ortiz, in light of the enhancement, it

8   is a six-year minimum period, and that could be for the rest of

9   your life, as well.

10          Do you understand that?

11          DEFENDANT-ORTIZ:  Yes, sir.

12          THE COURT:  Mr. Delgado, it would be a four-year

13   minimum, and possibly up to the rest of your life.

14          Do you understand that, sir?

15          DEFENDANT-DELGADO:  Yes.

16          THE COURT:  And, Mr. Morales, in your case, it could

17   never be more than three years.

18          Do you understand that?

19          DEFENDANT-MORALES:  Yes.

20          THE COURT:  And, Mr. Contreras, it could never be

21   longer than one year.

22          Do you understand that?

23          DEFENDANT-CONTRERAS:  Yes, sir.

24          THE COURT:  While we are on the subject of supervised

25   release, I told you there would be rules to follow while you

1    are on supervision.  In the event that the Government believes

2    that there is a violation of any term or condition of

3    supervised release, it is possible that you may be required to

4    come back to court.  And, if you come back to court for a

5    hearing on that alleged violation, you would be represented by

6    counsel.  But if, after the evidence is considered, the Court

7    determines that a violation occurred, then the Court would have

8    various options available to it as a punishment or consequence

9    of the violation:

10           The Court could return you to prison to spend more

11   time.

12           The Court could enlarge the period of supervision.

13           The Court could also tweak or change the rules by

14   which you would have to comply while you were on supervised

15   release.

16           Or I could do a combination of all of those things.

17           Do you understand all of the consequences if there is

18   a violation of supervised release?

19           Mr. Castillo?

20           DEFENDANT-CASTILLO:  Yes, sir.

21           THE COURT:  Mr. Bueno?

22           DEFENDANT-BUENO:  Yes.

23           THE COURT:  Mr. Ortiz?

24           DEFENDANT-ORTIZ:  Yes, sir.

25           THE COURT:  Mr. Delgado?

MICHAEL P. NOBLES, CSR

```
1              DEFENDANT-DELGADO:  Yes, sir.

2              THE COURT:  Mr. Morales?

3              DEFENDANT-MORALES:  Yes, sir.

4              THE COURT:  Mr. Contreras?

5              DEFENDANT-CONTRERAS:  Yes, sir.

6              THE COURT:  I told you what the very worst sentence

7    could be.  That hardly ever is imposed, I will tell you.  What

8    we do instead is we try, on the sentencing date, to impose a

9    sentence that is fair and reasonable and, in the words of the

10   statute, sufficient but not greater than required in order to

11   accomplish all of the purposes of the statute.

12             I'm directed, on your sentencing date, to first

13   consider the advisory Guidelines.  And, in considering those

14   Guidelines, I'm going to make reference to a chart like the one

15   I'm holding up, and one that I hope you have had the chance to

16   review and discuss with your attorney before today's hearing.

17             Have you seen a chart like the one I'm holding and

18   discussed it with your lawyer before today's hearing?

19             Mr. Contreras?

20             DEFENDANT-CONTRERAS:  I have.

21             THE COURT:  Mr. Morales?

22             DEFENDANT-MORALES:  Yes.

23             THE COURT:  Mr. Delgado?

24             DEFENDANT-DELGADO:  Yes.

25             THE COURT:  Mr. Ortiz?
```

```
 1              DEFENDANT-ORTIZ:  Yes, sir.

 2              THE COURT:  Mr. Bueno?

 3              DEFENDANT-BUENO:  Yes, sir.

 4              THE COURT:  Mr. Castillo?

 5              DEFENDANT-CASTILLO:  Yes, sir.

 6              THE COURT:  Basically, on your sentencing day, the way

 7    I'll start off is by considering the Guidelines, making

 8    reference to this chart.  We start with a certain number, and

 9    that number depends upon the crime of conviction.  Every crime

10    of conviction carries a number that is associated with it.

11    That is called the base offense level.

12              In an illegal re-entry case, it is an 8.  In all of

13    the other cases involving drugs it varies, depending upon the

14    weight of the contraband.

15              And so whatever number we begin with, to that base

16    offense level we'll add any enhancements that are appropriate

17    under the Guidelines, and we will subtract any adjustments that

18    are appropriate in light of all of the information that I have.

19              Once I do the arithmetic, after I add the

20    enhancements, deduct the adjustments, the number with which I

21    am left is called the total offense level.  And that will be

22    the actual number on the vertical side of this chart that I'm

23    going to consider.

24              Horizontally, then, I have different criminal history

25    categories.  We will determine what the appropriate category is
```

1    in your individual case.  Once we make that determination, I'm

2    going to go back and find the total offense level, find the

3    criminal history category, and then determine where both of

4    those numbers happen to intersect within the body of the chart.

5    And, at the point of intersection, that's called the Guideline

6    sentence range.  Basically, there are numbers, and there's a

7    number from a low number to a high number.  And what it

8    suggests to the Court is a range of months that the Court ought

9    to consider as possibly a fair sentence in your case.

10             My first question to you is:  Do you understand how,

11   on your sentencing date, the Court is first going to consider

12   the advisory Guidelines, make reference to this chart, go

13   through the process I just described, determine the Guideline

14   range, and that the Court has the option of sentencing you

15   within those Guidelines anywhere from the bottom of the range

16   to the high end of range as one option for sentencing?

17             Do you understand all of that?

18             Mr. Contreras?

19             DEFENDANT-CONTRERAS:  Yes, sir.

20             THE COURT:  Mr. Morales?

21             DEFENDANT-MORALES:  Yes.

22             THE COURT:  Mr. Delgado?

23             DEFENDANT-DELGADO:  Yes.

24             THE COURT:  Mr. Ortiz?

25             DEFENDANT-ORTIZ:  Yes, sir.

```
 1            THE COURT:  Mr. Bueno?

 2            DEFENDANT-BUENO:  Yes, sir.

 3            THE COURT:  Mr. Castillo?

 4            DEFENDANT-CASTILLO:  Yes, sir.

 5            THE COURT:  Now, because they are advisory, and

 6   because there is much more information about you that is

 7   relevant to what a fair sentence would be other than those two

 8   factors alone, and I hope to have a report that gives me so

 9   much more information about you on the date of your sentence, I

10   may go through that process, which I'm required to do, and then

11   determine that the sentencing range that is suggested as

12   appropriate is not the best fit in your case.

13            Because they are advisory, and because some discretion

14   has been re-birthed to federal judges, the Court can actually

15   decide that we shouldn't sentence within the range.  And so it

16   is possible that I may decide that you, in your case, should be

17   entitled to a more lenient sentence, possibly, or to a more

18   severe sentence, depending upon all of that information.

19            Do you understand that the Court has those two options

20   available to it, as far as imposing a sentence on your

21   sentencing date?

22            Mr. Castillo?

23            DEFENDANT-CASTILLO:  Yes, sir.

24            THE COURT:  Mr. Bueno?

25            DEFENDANT-BUENO:  Yes.
```

```
 1            THE COURT:  Mr. Ortiz?

 2            DEFENDANT-ORTIZ:  Yes, sir.

 3            THE COURT:  Mr. Delgado?

 4            DEFENDANT-DELGADO:  Yes, sir.

 5            THE COURT:  Mr. Morales?

 6            DEFENDANT-MORALES:  Yes, sir.

 7            THE COURT:  Mr. Contreras?

 8            DEFENDANT-CONTRERAS:  Yes, sir.

 9            THE COURT:  Now, I'm sure your good lawyers, in

10    knowing much more about your case than I do, and knowing much

11    more about you, with all the discussions they have had with

12    you, hopefully, in knowing their experience in federal court

13    and their knowledge of the Guidelines, have, in reviewing this

14    chart with you, probably given you his or her opinion about

15    what sentence you might possibly expect to receive on your

16    sentencing date.

17            Has your lawyer given you an opinion with respect to

18    the sentence, especially in terms of the length of

19    imprisonment?  Has your lawyer shared that opinion with you?

20            Mr. Castillo?

21            DEFENDANT-CASTILLO:  Yes, sir.

22            THE COURT:  Mr. Bueno?

23            DEFENDANT-BUENO:  Yes.

24            THE COURT:  Mr. Ortiz?

25            DEFENDANT-ORTIZ:  Yes, sir.
```

```
1              THE COURT:  Mr. Delgado?
2              DEFENDANT-DELGADO:  Yes, sir.
3              THE COURT:  Mr. Morales?
4              DEFENDANT-MORALES:  Yes, sir.
5              THE COURT:  Mr. Contreras?
6              DEFENDANT-CONTRERAS:  Yes, she has.
7              THE COURT:  Do you understand that your lawyer's
8   opinion about the sentence that you may receive, the length of
9   the imprisonment, do you understand that that opinion is only
10  an opinion?  It is not a promise to you, it is not a guarantee,
11  it is their best guess, based on a lot of experience and
12  knowledge and information.  But it is like all other opinions.
13  It may be correct, but it may be incorrect.
14             Do you understand all of that?
15             Mr. Contreras?
16             DEFENDANT-CONTRERAS:  I understand.
17             THE COURT:  Mr. Morales?
18             DEFENDANT-MORALES:  Yes.
19             THE COURT:  Mr. Delgado?
20             DEFENDANT-DELGADO:  Yes.
21             THE COURT:  Mr. Ortiz?
22             DEFENDANT-ORTIZ:  Yes, sir.
23             THE COURT:  Mr. Bueno?
24             DEFENDANT-BUENO:  Yes, sir.
25             THE COURT:  Mr. Castillo?
```

MICHAEL P. NOBLES, CSR

```
 1                 DEFENDANT-CASTILLO:  Yes, sir.
 2                 THE COURT:  Also, do you understand that right now,
 3       because I don't know as much about you as I would like to know
 4       when I impose sentence, do you understand that right now I am
 5       making absolutely no commitment to you about any specific
 6       sentence that I intend to impose in your case?
 7                 Do you understand that?
 8                 Mr. Castillo?
 9                 DEFENDANT-CASTILLO:  Yes, sir.
10                 THE COURT:  Mr. Bueno?
11                 DEFENDANT-BUENO:  Yes, sir.
12                 THE COURT:  Mr. Ortiz?
13                 DEFENDANT-ORTIZ:  Yes, sir.
14                 THE COURT:  Mr. Delgado?
15                 DEFENDANT-DELGADO:  Yes, sir.
16                 THE COURT:  Mr. Morales?
17                 DEFENDANT-MORALES:  Yes, sir.
18                 THE COURT:  Mr. Contreras?
19                 DEFENDANT-CONTRERAS:  Yes, sir.
20                 THE COURT:  In the report that I made reference to,
21       the probation officer who prepares the report will also, within
22       the report, review the Guidelines, the advisory Guidelines, and
23       share an opinion with me about how he or she believes the
24       Guidelines are applicable in your case.  So that's really
25       another opinion that the Court will have available to it.
```

1          Do you understand that the probation officer's opinion

2     in the sentencing report, that that opinion could be the same

3     as or even different from the opinion that your lawyer has on

4     the terms of imprisonment?

5          Do you understand that?

6          Mr. Contreras?

7          DEFENDANT-CONTRERAS:  Yes, sir.

8          THE COURT:  Mr. Morales?

9          DEFENDANT-MORALES:  Yes.

10         THE COURT:  Mr. Delgado?

11         DEFENDANT-DELGADO:  Yes.

12         THE COURT:  Mr. Ortiz?

13         DEFENDANT-ORTIZ:  Yes, sir.

14         THE COURT:  Mr. Bueno?

15         DEFENDANT-BUENO:  Yes, sir.

16         THE COURT:  Mr. Castillo?

17         DEFENDANT-CASTILLO:  Yes, sir.

18         THE COURT:  If you are not a citizen of the

19    United States, then one of the consequences of being convicted

20    of a felony-level offense is that you will be removed,

21    excluded, or deported from the country.

22         And do you understand that?

23         Mr. Bueno?

24         DEFENDANT-BUENO:  Yes, sir.

25         THE COURT:  Mr. Delgado?

1          DEFENDANT-DELGADO:  Yes, sir.

2          THE COURT:  Mr. Morales?

3          DEFENDANT-MORALES:  Yes, sir.

4          THE COURT:  There are three of you who indicated you

5    are citizens of the United States.  If you are convicted of a

6    felony-level offense, there are also consequences to that.  And

7    many of the civil rights which you may presently enjoy will be

8    no longer available to you.

9          For example, you would no longer be eligible to vote.

10   You could no longer run for office or hold public office.  You

11   could no longer sit on a jury.  You could no longer possess

12   weapons.

13         And, if you believe that you are entitled to

14   Government licenses, benefits, or employment, all of those

15   opportunities may no longer be afforded to you.

16         Do you understand those consequences?

17         Mr. Contreras?

18         DEFENDANT-CONTRERAS:  Yes, sir, I do.

19         THE COURT:  Mr. Ortiz?

20         DEFENDANT-ORTIZ:  Yes, sir.

21         THE COURT:  And, Mr. Castillo?

22         DEFENDANT-CASTILLO:  Yes, sir.

23         THE COURT:  Regardless of how long the sentence is,

24   you need to know that there is no parole in the federal system,

25   and you will never go before a parole board.  And, therefore,

```
1    you should hold no expectation that your sentence will be
2    substantially reduced.
3              Do you understand that?
4              Mr. Contreras?
5              DEFENDANT-CONTRERAS:  Yes, sir.
6              THE COURT:  Mr. Morales?
7              DEFENDANT-MORALES:  Yes.
8              THE COURT:  Mr. Delgado?
9              DEFENDANT-DELGADO:  Yes.
10             THE COURT:  Mr. Ortiz?
11             DEFENDANT-ORTIZ:  Yes, sir.
12             THE COURT:  Mr. Bueno?
13             DEFENDANT-BUENO:  Yes, sir.
14             THE COURT:  Mr. Castillo?
15             DEFENDANT-CASTILLO:  Yes, sir.
16             THE COURT:  It is possible, I'll tell you, if your
17   sentence exceeds 12 months, even by one day, that you may
18   become eligible for good conduct time.  That's up to prison
19   officials.  The Court has no role to play in that.  And that
20   would be entirely a matter that you take up with the prison
21   officials, in the event that you didn't feel you got what you
22   deserved.
23             Do you understand that if you plead guilty today that
24   you will forever give up, or waive, your right to have a trial
25   in your case?
```

```
1              Do you understand that?

2              Mr. Contreras?

3              DEFENDANT-CONTRERAS:  Yes, sir.

4              THE COURT:  Mr. Morales?

5              DEFENDANT-MORALES:  Yes.

6              THE COURT:  Mr. Delgado?

7              DEFENDANT-DELGADO:  Yes.

8              THE COURT:  Mr. Ortiz?

9              DEFENDANT-ORTIZ:  Yes, sir.

10             THE COURT:  Mr. Bueno?

11             DEFENDANT-BUENO:  Yes, sir.

12             THE COURT:  Mr. Castillo?

13             DEFENDANT-CASTILLO:  Yes, sir.

14             THE COURT:  In addition to waiving, or giving up, your

15    right to have a trial, you are also waiving, or giving up, all

16    of the rights which you are able to exercise if your case were

17    to go to trial.  Because I need to make a decision that your

18    plea is an informed plea, I have to tell you about all of those

19    rights that you are waiving.  Please listen carefully, because

20    the list is a little bit long.  All of these are rights that

21    you have if you go to trial.

22             If you went to trial, you would have the right to

23    require that the Government come into court and prove your

24    guilt beyond a reasonable doubt.  The Government has the burden

25    of proof.  The Government has to put on evidence.  They have to
```

1    call witnesses.  And, if they are unable to convince the judge

2    or the jury of your guilt beyond a reasonable doubt, the judge

3    or the jury listening to the case would have to return a

4    verdict of not guilty.

5         You, as the accused, have no burden of proof.  You

6    don't have to prove anything.  You don't have to testify.  You

7    don't have to call witnesses.

8         At the end of all the evidence the question for the

9    jury is the same, whether there is any evidence on the defense

10   side or not, and it is:  Did the Government prove guilt beyond

11   a reasonable doubt?

12        If you went to trial, you would have the right to see

13   the witnesses who would be called into court to testify against

14   you.

15        If you went to trial, you would have the right to have

16   the Government witnesses cross-examined by your lawyer.

17        If you went to trial, you would have the right to have

18   your attorney there throughout the course of the trial to

19   assist you in every way possible, to make all the proceedings

20   understandable to you, to ensure that the evidence was legally

21   admissible evidence, to be your spokesperson in court, to

22   answer your questions, to basically help you in any way

23   possible, so that you were completely protected in every way.

24        If you went to trial, you would, at the beginning of

25   the trial, enjoy the presumption of innocence.  The jury would

1    be instructed that you are legally presumed to be innocent at

2    the beginning, because no evidence will have been introduced.

3    And whether or not that presumption of innocence continues to

4    stay with you would depend upon how the jury or the judge

5    decided to weigh or value the evidence as it was being

6    presented.  It's something that could possibly stay with you

7    throughout the trial, if they never believed the evidence, or

8    it may be removed based upon their belief in the evidence.  But

9    it's a right that you enjoy at the very beginning of the trial.

10           If you went to trial, you would have the right to

11   remain silent.  That means that the Government could never call

12   you to the stand and force you to be a witness against

13   yourself.

14           If you went to trial and decided to remain silent, the

15   jury would be instructed that they could never infer anything

16   as a result of your guilt -- as a result of your silence.  I'm

17   sorry.

18           They also would be instructed that they could never

19   even mention the fact that you decided not to testify in your

20   case during their deliberations or at any time during the

21   trial.

22           If you went to trial, you would, even though you have

23   the right to remain silent, nevertheless, have the opportunity

24   to testify for yourself if you wish to.

25           If you insisted on getting on the stand and telling

1    your side of the story, that opportunity would be afforded to

2    you, even to the dismay of your lawyer, at times.  But you

3    would be there and have your day in court and testify, and you

4    would subject yourself to cross-examination by the prosecution.

5         If you went to trial, and if you wanted to have other

6    evidence considered that you thought was favorable to your side

7    of the case, the opportunity to present that evidence would be

8    afforded to you.  Remember, you don't have a burden and you

9    don't have to present evidence.  But if you want others to come

10   in and testify, you could present the testimony of live

11   witnesses or introduce documents, photographs, or anything that

12   is admissible under the rules of evidence that you thought was

13   helpful to your case.

14        If you went to trial, you would have the right to have

15   a jury selected and impaneled, which jury would sit in the box,

16   listen to the evidence, and then determine for itself whether

17   or not the Government met or failed to meet its burden of

18   proof.

19        If you went to trial, and the trial resulted in a

20   guilty verdict, you could appeal that guilty verdict if you did

21   not believe that it was supported by the evidence.

22        And, finally, if you went to trial, your lawyer would

23   have the right to receive witness statements from the

24   Government witnesses who took the stand at trial to testify

25   against you who had, prior to trial, provided written witness

1    statements, which written witness statements could then be used

2    for purposes of impeaching the credibility of the witness as he

3    or she testified.

4            All of those are rights that you enjoy if you go to

5    trial.  But you have already told me that you understood that

6    you are giving up your right to have a trial if you plead

7    guilty.  Do you also understand all of the individual rights

8    which I just reviewed with you which you are, in turn, waiving,

9    or giving up, if you plead guilty today?

10           Mr. Contreras?

11           DEFENDANT-CONTRERAS:  Yes, sir.

12           THE COURT:  Mr. Morales?

13           DEFENDANT-MORALES:  Yes.

14           THE COURT:  Mr. Delgado?

15           DEFENDANT-DELGADO:  Yes.

16           THE COURT:  Mr. Ortiz?

17           DEFENDANT-ORTIZ:  Yes, sir.

18           THE COURT:  Mr. Bueno?

19           DEFENDANT-BUENO:  Yes, sir.

20           THE COURT:  Mr. Castillo?

21           DEFENDANT-CASTILLO:  Yes, sir.

22           THE COURT:  Are there any issues of restitution in any

23    of the cases, or forfeiture, Mr. Gallegos?

24           MR. GALLEGOS:  No, Your Honor.

25           THE COURT:  I need to review Plea Agreements with

1    those of you who have them in your case.  We'll do that,

2    hopefully, quickly.

3            Mr. Contreras, is that your autograph?

4            DEFENDANT-CONTRERAS:  Yes, sir.

5            THE COURT:  Did you sign the Plea Agreement in your

6    case freely and voluntarily?

7            DEFENDANT-CONTRERAS:  I did.

8            THE COURT:  Did you read it before you signed it?

9            DEFENDANT-CONTRERAS:  Yes, sir.

10           THE COURT:  Did you understand it?

11           DEFENDANT-CONTRERAS:  Yes, sir.

12           THE COURT:  Did you discuss it with your lawyer?

13           DEFENDANT-CONTRERAS:  Yes, I did.

14           THE COURT:  Mr. Delgado, is this your signature where

15   I'm pointing, sir?

16           DEFENDANT-DELGADO:  Yes, sir.

17           THE COURT:  Did you sign the Plea Agreement freely and

18   voluntarily?

19           DEFENDANT-DELGADO:  Yes.

20           THE COURT:  The Plea Agreement is in English.  Did

21   your lawyer translate it for you or explain it to you, so that

22   when you signed it, you understood everything it contained?

23           DEFENDANT-DELGADO:  Yes, he explained it.

24           THE COURT:  Well, it's a she.  And have you had any

25   difficulty communicating with your lawyer in Spanish?

1              DEFENDANT-DELGADO:  No, sir.

2              THE COURT:  Okay.

3              And, Mr. Ortiz, is this your autograph where I'm

4    pointing, sir?

5              DEFENDANT-ORTIZ:  Yes, sir.

6              THE COURT:  Did you sign the Plea Agreement freely and

7    voluntarily?

8              DEFENDANT-ORTIZ:  Yes, sir, I did.

9              THE COURT:  Did you read it before you signed it?

10             DEFENDANT-ORTIZ:  Yes, sir, I did.

11             THE COURT:  Did you discuss it with your lawyer?

12             DEFENDANT-ORTIZ:  Yes, sir, I did.

13             THE COURT:  Did you understand what you were signing?

14             DEFENDANT-ORTIZ:  Yes, sir.

15             THE COURT:  Mr. Bueno, is this your signature where

16   I'm pointing, sir?

17             DEFENDANT-BUENO:  Yes, sir.

18             THE COURT:  Did you sign the document freely and

19   voluntarily?

20             DEFENDANT-BUENO:  Yes, sir.

21             THE COURT:  Before signing it, did your lawyer explain

22   it to you or translate it for you so that you understood

23   everything that the document contained?

24             DEFENDANT-BUENO:  It was explained to me.

25             THE COURT:  Have you had any difficulty communicating

1    with Mr. Trejo in Spanish?

2            DEFENDANT-BUENO:  No, sir.

3            THE COURT:  There's no Plea Agreement.  He's charged

4    only in Count 2?

5            MR. BAKER:  There is a Plea Agreement.

6            THE COURT:  Wait, wait, wait.

7            Robert, I don't have the Plea Agreement on

8    Mr. Castillo's case.

9    (BRIEF RECESS.)

10           MR. GALLEGOS:  I have a copy, Your Honor.  Is that

11   okay?

12           THE COURT:  Sure.  I'm going to mark it up.  Thank

13   you.

14           Mr. Castillo, is this your signature where I'm

15   pointing, sir?

16           DEFENDANT-CASTILLO:  Yes, sir.

17           THE COURT:  Did you sign the Plea Agreement freely and

18   voluntarily?

19           DEFENDANT-CASTILLO:  Yes, sir.

20           THE COURT:  Did you read it before you signed it?

21           DEFENDANT-CASTILLO:  Yes, sir.

22           THE COURT:  Did you discuss it with your attorney?

23           DEFENDANT-CASTILLO:  Yes, sir.

24           THE COURT:  And did you understand what you were

25   signing?

1          DEFENDANT-CASTILLO:  Yes, sir.

2          THE COURT:  Let's review just parts of the Plea

3   Agreements to make sure that all of us have the same

4   understanding.

5          It is my understanding, Mr. Contreras, that in your

6   Plea Agreement you are agreeing to enter a plea of guilty to

7   the felony Information.  And the Government, in turn, will move

8   for dismissal of the Indictment pending in your case at the

9   time of sentencing.

10         Do you understand that to be a part of your Plea

11  Agreement?

12         DEFENDANT-CONTRERAS:  Yes, I do, sir.

13         THE COURT:  Mr. Castillo, in your Plea Agreement, it

14  is agreed between you and the Government that you will plead

15  guilty to Count 2 of the Indictment in the case.

16         Do you understand that to be a part of the Plea

17  Agreement in your case?

18         DEFENDANT-CASTILLO:  Yes, sir.

19         THE COURT:  In the other Plea Agreements, my

20  understanding is that each one of you plans to plead guilty to

21  Count 1 of the Indictment.  And the Government, in turn,

22  promises to dismiss the remaining counts at the time of

23  sentencing.

24         Do you understand that to be a part of the Plea

25  Agreement in your case?

1           Mr. Delgado?

2           DEFENDANT-DELGADO:  Yes.

3           THE COURT:  Mr. Ortiz?

4           DEFENDANT-ORTIZ:  Yes, sir.

5           THE COURT:  And, Mr. Bueno?

6           DEFENDANT-BUENO:  Yes, sir.

7           THE COURT:  In each of the Plea Agreements, you are

8   informed that there are various adjustments the Court may

9   grant.  One of the adjustments is referred to as acceptance of

10  responsibility.  If the Court awards you two levels off for

11  acceptance of responsibility, the Government is promising you

12  to -- that they will move for the third level, so that your

13  entire benefit is a three-level benefit which, basically, makes

14  it less time in prison.

15          Do you understand that is a part of the Plea Agreement

16  in your case?

17          Mr. Castillo?

18          DEFENDANT-CASTILLO:  Yes, sir.

19          THE COURT:  Mr. Bueno?

20          DEFENDANT-BUENO:  Yes.

21          THE COURT:  Mr. Ortiz?

22          DEFENDANT-ORTIZ:  Yes, sir.

23          THE COURT:  Mr. Delgado?

24          DEFENDANT-DELGADO:  Yes, sir.

25          THE COURT:  And, Mr. Contreras?

MICHAEL P. NOBLES, CSR

1          DEFENDANT-CONTRERAS:  Yes, sir.

2          THE COURT:  Okay.  In some of the Plea Agreements you

3    are informed about the possibility that the Court may make a

4    determination that you played a minor role.  If the Court were

5    to grant that, that adjustment could be anywhere from two to

6    four, just depending upon the circumstances in your case.

7          If the Court awards you a two-level adjustment, in

8    those Plea Agreements that I'll review with you momentarily,

9    the Government promises not to oppose that adjustment if they

10   believe that the evidence supports it.

11         That provision is in your Plea Agreement.  Do you

12   understand that?

13         Mr. Castillo?

14         DEFENDANT-CASTILLO:  Yes, sir.

15         THE COURT:  Do you understand that it applies to you,

16   as well, Mr. Bueno?

17         DEFENDANT-BUENO:  Yes, sir.

18         THE COURT:  It applies to you, as well, Mr. Ortiz.

19         DEFENDANT-ORTIZ:  Yes, sir.

20         THE COURT:  And it applies to you, as well,

21   Mr. Delgado.

22         DEFENDANT-DELGADO:  Yes, sir.

23         THE COURT:  In your case, Mr. Contreras, yours is just

24   a little bit different.  The Government is agreeing, in your

25   case, to remain silent as to any request on behalf of the

1    Defendant concerning role in the offense.  And the Government

2    does indicate that they do not oppose a request for a split

3    sentence.  Do you understand that is a part of the Plea

4    Agreement in your case?

5           DEFENDANT-CONTRERAS:  I understand.

6           THE COURT:  Okay.

7           In some of the Plea Agreements, two of them, there is

8    an opportunity for yet a third possible adjustment, which is

9    referred to generically as safety valve.  It is an additional

10   two levels which we might possibly take off if it is applicable

11   in your case.  It does require the provision of information.

12   The information has to be of a certain quality.  It has to be

13   done within the time frame set forth in the Plea Agreement.

14   And ultimately, while the Court will look to the prosecutor to

15   give information about whether or not they believe it is

16   merited, the Court is the -- that's one of the few things left

17   to the Court to decide.

18          Do you understand that to be a part of the Plea

19   Agreement in your case?

20          Mr. Castillo?

21          DEFENDANT-CASTILLO:  Yes, sir.

22          THE COURT:  And, Mr. Bueno?

23          DEFENDANT-BUENO:  Yes, sir.

24          THE COURT:  In each of the Plea Agreements, by signing

25   it, you are waiving your right to receive any additional

1    information from the prosecution.

2           Do you understand that provision is in your Plea

3    Agreement?

4           Mr. Contreras?

5           DEFENDANT-CONTRERAS:  Yes, sir.

6           THE COURT:  Mr. Delgado?

7           DEFENDANT-DELGADO:  Yes.

8           THE COURT:  Mr. Bueno?

9           DEFENDANT-BUENO:  Yes, sir.

10          THE COURT:  In each of the Plea Agreements, by signing

11   it, you are waiving your right to challenge any sentence this

12   Court may impose in your case, even though, as I've explained,

13   you and I today do not know what that sentence is going to be.

14   Do you understand that to be a part of the Plea Agreement in

15   your case?

16          Mr. Castillo?

17          DEFENDANT-CASTILLO:  Yes, sir.

18          THE COURT:  Mr. Bueno?

19          DEFENDANT-BUENO:  Yes, sir.

20          THE COURT:  Mr. Ortiz?

21          DEFENDANT-ORTIZ:  Yes, sir.

22          THE COURT:  Mr. Delgado?

23          DEFENDANT-DELGADO:  Yes, sir.

24          THE COURT:  And, Mr. Contreras?

25          DEFENDANT-CONTRERAS:  Yes, sir.

```
 1              THE COURT:  Additionally, each one of you, by signing
 2      the Plea Agreement, is waiving your right to file an appeal or
 3      attack the judgment after it has been entered on any and all
 4      grounds, with the exception of two.  You would reserve your
 5      right to proceed either by way of appeal or by post-conviction
 6      writ if you are alleging prosecutorial misconduct or
 7      ineffective assistance of counsel.
 8              Do you understand that to be a part of your Plea
 9      Agreement?
10              Mr. Contreras?
11              DEFENDANT-CONTRERAS:  Yes, sir.
12              THE COURT:  Mr. Delgado?
13              DEFENDANT-DELGADO:  Yes.
14              THE COURT:  Mr. Ortiz?
15              DEFENDANT-ORTIZ:  Yes, sir.
16              THE COURT:  Mr. Bueno?
17              DEFENDANT-BUENO:  Yes, sir.
18              THE COURT:  And, Mr. Castillo?
19              DEFENDANT-CASTILLO:  Yes, sir.
20              THE COURT:  Each of you is assuring me that you are
21      fully satisfied with your lawyer's assistance and that you
22      believe that your lawyer has provided competent representation.
23              Do you understand that is a part of the Plea Agreement
24      you signed?
25              Mr. Castillo?
```

```
1              DEFENDANT-CASTILLO:  Yes, sir.

2              THE COURT:  Mr. Bueno?

3              DEFENDANT-BUENO:  Yes, sir.

4              THE COURT:  Mr. Ortiz?

5              DEFENDANT-ORTIZ:  Yes, sir.

6              THE COURT:  Mr. Delgado?

7              DEFENDANT-DELGADO:  Yes, sir.

8              THE COURT:  Mr. Contreras?

9              DEFENDANT-CONTRERAS:  Yes, sir.

10             THE COURT:  And, finally, you are assuring me that the

11     information in the Factual Basis for the Government, in

12     narrative form, tells me what they think the evidence in your

13     case would show, that you believe that information to be true

14     and correct.

15             Do you understand that to be a part of the Plea

16     Agreement in your case?

17             Mr. Contreras?

18             DEFENDANT-CONTRERAS:  Yes, sir.

19             THE COURT:  Mr. Delgado?

20             DEFENDANT-DELGADO:  Yes, sir.

21             THE COURT:  Mr. Ortiz?

22             DEFENDANT-ORTIZ:  Yes, sir.

23             THE COURT:  Mr. Bueno?

24             DEFENDANT-BUENO:  Yes, sir.

25             THE COURT:  And, Mr. Castillo?
```

```
1              DEFENDANT-CASTILLO:  Yes, sir.

2              THE COURT:  In those cases, is there any objection to

3    the Court's receipt of the Plea Agreement and the Court making

4    the Plea Agreement a part of the record?

5              Mr. Gallegos, on all cases?

6              MR. GALLEGOS:  No, Your Honor.

7              THE COURT:  And then, Ms. Salome-Smith?

8              MS. SALOME-SMITH:  No, Your Honor.

9              THE COURT:  Ms. Marie Romero-Martinez?

10             MS. ROMERO-MARTINEZ:  No, Your Honor.

11             THE COURT:  Mr. Margarito Rodriguez?

12             MR. RODRIGUEZ:  No, Your Honor.

13             THE COURT:  Mr. Trejo?

14             MR. TREJO:  No, Your Honor.

15             THE COURT:  Mr. Baker?

16             MR. BAKER:  No, Your Honor.

17             THE COURT:  The Court will receive the Plea Agreement

18   in each case, approve it, and make it a part of the record.

19             Have I failed to admonish your client on anything that

20   I need to cover more extensively?

21             Mr. Baker?

22             MR. BAKER:  No, Your Honor.

23             THE COURT:  Mr. Trejo?

24             MR. TREJO:  No, Your Honor.

25             THE COURT:  Mr. Rodriguez?
```

1          MR. RODRIGUEZ:  No, Your Honor.

2          THE COURT:  Ms. Romero?

3          MS. ROMERO-MARTINEZ:  No, Your Honor.

4          THE COURT:  Mr. Calhoun?

5          MR. CALHOUN:  No, Your Honor.

6          THE COURT:  Ms. Salome-Smith?

7          MS. SALOME-SMITH:  No, Your Honor.

8          THE COURT:  Mr. Gallegos?

9          MR. GALLEGOS:  Judge, my notes indicate that we went

10   from attorney satisfaction straight to explaining the charges

11   in the Indictment.  And I don't recall if Your Honor asked if

12   their specific pleas were voluntary.

13          THE COURT:  I did.  I covered it.  Thank you very

14   much.

15          Mr. Nobles?

16          COURT REPORTER:  No, sir.

17          THE COURT:  Okay.  Listen carefully.  I'm going to go

18   back to individual hearings, and I'm going to ask the

19   prosecutor to tell me what the evidence would show if your case

20   were to go to trial.  Listen carefully.  As we get to your

21   individual case, I'm going to turn to you immediately after he

22   finishes and ask if you agree with the information which he

23   provides.

24          Let's go ahead with Mr. Contreras' case, please.

25          MR. GALLEGOS:  The Government would show that on

1    August 29th, 2007, the CS received a telephone call from

2    Contreras' codefendant, Aguirre, to verify if the CS could

3    smuggle a load -- a loaded vehicle this day.  Aguirre stated

4    the vehicle would be a Ford Taurus.

5         At approximately 2:40 p.m., the CS met with Aguirre at

6    the top of the Bridge of the Americas.  The CS stated a short

7    time later a suspect named Hilario Morales, who was operating a

8    green Ford Taurus, arrived at the top of the bridge.

9         Morales exited the vehicle and the CS entered.  The CS

10   stated Morales then returned to Mexico.  The CS stated that

11   he/she received telephone calls from Aguirre about the progress

12   in the smuggling of the marijuana.

13        At approximately 2:45 p.m., the CS successfully

14   crossed the loaded vehicle into El Paso.  The CS then drove the

15   vehicle to a predestined location and met with DEA agents.

16        A later search of the vehicle revealed 77.4 kilograms

17   of a green, leafy substance that later field tested positive

18   for marijuana.

19        At approximately 3:14 p.m., the CS spoke to Aguirre,

20   who asked the CS to meet at a Circle K located near Contreras'

21   home.

22        At approximately 4:15 p.m., a gray Dodge truck

23   registered to Contreras arrived at the Circle K and parked

24   adjacent to the loaded vehicle.  The CS met with Contreras and

25   Aguirre.  The CS requested payment for delivery of the load.

MICHAEL P. NOBLES, CSR

1    The CS stated Aguirre provided the CS with $2,500 for delivery

2    of the loaded vehicle.  DEA agents, along with El Paso police

3    marked units arrested both Aguirre and Contreras at this time.

4             After waiving his Miranda rights, Contreras stated he

5    did not have any knowledge of the marijuana deal.  After

6    speaking to Aguirre, agents then asked Contreras, "All you did

7    was lend your brother-in-law your cell phone to get this deal

8    going?"

9             To which Contreras agreed and stated that -- stated

10   this is all he did.

11            Contreras now admits that his initial lack of

12   truthfulness concerning the use of his cellular telephone was

13   an affirmative act of concealment.

14            THE COURT:  And do you agree with that information,

15   Mr. Contreras?

16            DEFENDANT-CONTRERAS:  Yes, sir, I do.

17            THE COURT:  Mr. Contreras, you stand charged in Count

18   1 of the Information with a crime of misprision of a felony on

19   or about August the 29th.

20            To that charge do you wish to plead guilty or not

21   guilty?

22            DEFENDANT-CONTRERAS:  Guilty.

23            THE COURT:  And I'll be back with you in just a little

24   bit.

25            Let's go on to Mr. Morales' case, please.

```
1              MR. TREJO:  Your Honor, I'm sorry to interrupt.  But
2       could I ask leave of the Court to -- I have a hearing at 9:00,
3       and Mr. Calhoun has graciously agreed to stand in for my
4       client, Mr. Bueno.
5              But I would see if Your Honor, could dismiss me --
6              THE COURT:  It depends which court you are going to.
7       Where are you going?
8              MR. TREJO:  Judge Mesa.  I have a plea there --
9              THE COURT:  Okay.
10             MR. TREJO:  -- at 9:00.
11             THE COURT:  Okay.  Well, he's a good guy.  Yeah.
12      Sure.
13             MR. RODRIGUEZ:  Your Honor, I have the same request.
14      I have a sentencing with another good guy, Judge Martinez --
15             THE COURT:  He's a good guy.
16             MR. RODRIGUEZ:  -- Judge Montalvo.
17             THE COURT:  And Mr. Calhoun is going to step in for
18      you, as well, or...
19             MR. RODRIGUEZ:  Yes, Your Honor.
20             THE COURT:  Okay.  And is that acceptable with both of
21      the Defendants, Mr. Ortiz and Mr. Bueno?
22             DEFENDANT-BUENO:  Yes.
23             THE COURT:  Yes, sir.
24             DEFENDANT-ORTIZ:  Yes, sir.
25             THE COURT:  Okay.  Thank you.  Both of you are
```

```
 1   excused.
 2            MR. RODRIGUEZ:  Thank you, Judge.
 3            THE COURT:  Let's go back to Mr. Morales.  Mr. Calhoun
 4   is your lawyer, as I recall?
 5            MR. CALHOUN:  That is correct.
 6            THE COURT:  Your lawyer is sticking with you, guy.
 7            Let's go ahead, Mr. Gallegos.
 8            MR. GALLEGOS:  The Government would show that on
 9   October 20th, 2007, Jaime Leonel Morales-Espinoza applied for
10   entry into the United States at the Ysleta Port of Entry, which
11   is located in the Western District of Texas.  Morales was the
12   driver and sole occupant of a 1989 Mercury Grand Marquis.  At
13   primary, Morales exhibited signs of nervousness.
14            In secondary, a narcotic detector dog alerted to the
15   fuel tank.  Subsequent inspection revealed nonfactory
16   compartments behind the fuel tank and inside the trunk, which
17   contained 53 bundles of a green, leafy substance that field
18   tested positive for the properties of marijuana.  The total net
19   weight of the marijuana was 22.66 kilograms.
20            After being advised of his Miranda rights, Morales
21   requested an attorney.
22            Mr. Morales now admits to knowingly and intentionally
23   participating in this smuggling venture.
24            THE COURT:  Do you agree with that information,
25   Mr. Morales?
```

1          DEFENDANT-MORALES:  Yes, sir.

2          THE COURT:  You stand charged in Count 1 of the

3     Indictment with the importation of marijuana into the

4     United States on or about October 20th of 2007.

5          To that charge do you plead guilty or do you plead not

6     guilty?

7          DEFENDANT-MORALES:  Guilty.

8          THE COURT:  You stand charged in Count 2 of the

9     Indictment with the crime of possession of marijuana with the

10    intent to distribute on or about October 20th of 2007.

11         To that charge do you plead guilty or not guilty?

12         DEFENDANT-MORALES:  Yes, sir, guilty.

13         THE COURT:  And, Mr. Morales, what sum of money, if

14    any, were you promised if you transported it successfully?

15         DEFENDANT-MORALES:  $150.

16         THE COURT:  Okay.  Thank you.  And I'll be back with

17    you in just a little bit.

18         Let's go ahead with Mr. Delgado's case, please.

19         MR. GALLEGOS:  The Government would show that on

20    October 2nd, 2007, Mario Delgado-Martinez entered the

21    United States at the Bridge of the Americas Port of Entry,

22    which is located in the Western District of Texas.  Delgado was

23    the driver and sole occupant of a 1996 Pontiac Grand Prix.

24         At primary, Delgado exhibited signs of nervousness.

25         In secondary, a nonfactory compartment within the fuel

1  tank was discovered containing tape-wrapped bundles.  The

2  bundles contained a green, leafy substance which field tested

3  positive for marijuana.  A total of 63 bundles were removed.

4  The total net weight of the marijuana was 37.96 kilograms.

5           After waiving his Miranda rights, Delgado explained

6  that he was asked to take a vehicle to pick up a fuel pump in

7  El Paso, for which he would be paid 40 to $50.

8           Delgado admitted and now affirms that he suspected the

9  vehicle he was driving was possibly loaded with some type of

10  contraband and believed it to be either marijuana or cocaine.

11          THE COURT:  And, Mr. Delgado, do you agree with that

12  information?

13          DEFENDANT-DELGADO:  Yes.

14          THE COURT:  Mr. Delgado, you stand charged in Count 1

15  of the Indictment with importing marijuana into the

16  United States on or about October 2nd of 2007.

17          To that charge do you wish to plead guilty or do you

18  wish to plead not guilty?

19          DEFENDANT-DELGADO:  Guilty.

20          THE COURT:  And I'll be back with you in just a little

21  bit.

22          Let's go ahead with Mr. Ortiz' case, please.

23          MR. GALLEGOS:  The Government would show that on July

24  20th, 2007, Rey Ortiz applied for entry into the United States

25  at the Ysleta Port of Entry, which is located in the Western

1    District of Texas.  Ortiz was the driver and sole occupant of a

2    1982 Ford F-150 pickup.  The back of the pickup was laden with

3    various pieces of wood furniture.

4           At primary, Ortiz exhibited signs of nervousness.  A

5    narcotic detector dog subsequently alerted to the furniture.

6           Upon further inspection of the vehicle, a CBPO

7    discovered compartments located in the furniture in the back of

8    the vehicle.  Inside the compartments a CBPO found 226 bundles

9    wrapped in tape.  One bundle was probed, and a green, leafy

10   substance was extracted which field tested positive for

11   marijuana.  The total net weight of the marijuana was 97.81

12   kilograms.

13          After waiving his Miranda rights, Ortiz admitted that

14   he was aware that the vehicle he was driving was loaded with

15   marijuana.

16          Ortiz was to receive $500 for driving the vehicle to

17   Socorro, Texas, and leave it in his boss' driveway.

18          THE COURT:  And, Mr. Ortiz, do you agree with that

19   information, sir?

20          DEFENDANT-ORTIZ:  Yes, sir.

21          THE COURT:  Sir, you stand charged with the crime of

22   importing marijuana into the United States, which weighed 50

23   kilograms or more, on or about July 20th, 2007.

24          To that charge, at this time, do you wish to plead

25   guilty or do you wish to plead not guilty?

1          DEFENDANT-ORTIZ:  Yes, sir, I'm guilty.

2          THE COURT:  Okay.  And I'll be back on your case in

3    just a little bit.

4          Let's go ahead with Mr. Bueno's case, please.

5          MR. GALLEGOS:  The Government would show that on

6    October 16th, 2007, Jose Armando Bueno-Cruz was waiting to

7    enter the United States at the Paso del Norte Port of Entry,

8    which is located in the Western District of Texas.  Bueno was

9    the driver and sole occupant of a 1999 Ford Windstar.

10         During pre-primary roving canine operations, a

11   narcotic detector dog alerted to the vehicle.  Bueno exhibited

12   signs of nervousness.

13         The CBPO noticed that the floor of the van had been

14   tampered with.  The CBPO then lifted the rug and discovered a

15   trapdoor to a nonfactory compartment in the floor.  The

16   trapdoor was opened, and tape-wrapped bundles were discovered.

17   Subsequent inspection revealed 339 taped and plastic-wrapped

18   bundles concealed in the vehicle.  One bundle was probed, and a

19   green, leafy substance was extracted that field tested positive

20   for marijuana.  The total net weight of the marijuana was

21   142.93 kilograms.

22         After waiving his Miranda rights, Bueno explained that

23   Armando offered him $1,000 to drive a vehicle to El Paso.

24   Bueno stated that he was supposed to drive to the area of Vista

25   Del Sol and George Dieter and call someone named Memo.  Bueno

MICHAEL P. NOBLES, CSR

1   stated that he thought the van had drugs in it because of the

2   amount of money he was going to be paid.

3            THE COURT:  And, Mr. Bueno, do you agree with that

4   information, sir?

5            DEFENDANT-BUENO:  Yes.

6            THE COURT:  Mr. Bueno, you stand charged in Count 1 of

7   the Indictment with importing marijuana into the United States

8   on or about October 16th of 2007, which weight was 100

9   kilograms or more.

10           To that charge do you wish to plead guilty or not

11  guilty?

12           DEFENDANT-BUENO:  Guilty.

13           THE COURT:  And I'll be back with you in just a little

14  bit.

15           Let's go ahead with Mr. Castillo's case, please.

16           MR. GALLEGOS:  The Government would show that in March

17  2006 a source of information provided DEA with information that

18  Robert Carlos Villarreal was trafficking in multi-kilo

19  quantities of cocaine out of El Paso.

20           In May of 2006, the DEA learned that Villarreal used a

21  particular phone number to discuss narcotic-related matters.

22           On February 2nd, 2007, a Court-authorized Title III

23  intercept of Villarreal's phone was initiated.

24           On March 1st, 2007, intercepted calls revealed a

25  meeting between Villarreal and Raul Vivar-Villarreal at the

1    Petro Truck Stop.  During this time, Villarreal was actively

2    looking for drivers of narcotic loads, and had used the same --

3    strike that -- and had discussed the same with Vivar, his

4    cousin, with whom he had transported drugs in the past.  Vivar

5    suggested that his brother, Lorenzo Vivar, referred to as L.

6    Vivar, could transport the load.

7          On March 6th, 2007, Villarreal, Humberto

8    Padillo-Nunez -- strike that -- Humberto Padilla-Nunez, also

9    known as Gordo, and Vivar, had numerous conversations regarding

10   the delivery of a cocaine load to Atlanta.

11         Agents conducted surveillance on a meeting Villarreal,

12   Nunez, and Juarez had at the Ram Tire, and then at the Circle K

13   on Alameda, in El Paso, Texas.

14         Agents observed the driver of an F-150 transfer boxes

15   to an orange tractor-trailer parked next to a Simon's

16   tractor-trailer.  Both tractor-trailers traveled east of

17   El Paso.  Villarreal was observed following the Simon's

18   tractor-trailer.  Agents observed Vivar and Villarreal meet at

19   the Petro Truck Stop in Horizon, Texas.

20         Subsequently, L. Vivar and Cesar Castillo were

21   observed entering the tractor-trailer at the Petro.  L. Vivar

22   and Castillo were taken to the Petro to transport the load.

23   And, en route, the terms of their payment were discussed.

24         L. Vivar and Castillo were encountered at the

25   Sierra Blanca checkpoint in the Western District of Texas

1    during their trip.  Narcotics were not discovered at that time.

2           During the trip, L. Vivar called Raul Vivar to tell

3    him that he and Castillo had been searched at the checkpoint

4    but made it through, since the dog did not find anything.

5           On March 7th, 2007, L. Vivar and Castillo were stopped

6    by -- stopped in Kaufman County, Texas.  The trailer was then

7    found to have 49 kilograms of a substance testing positive for

8    cocaine hidden within the pallets of the legitimate load.  The

9    tractor was found to have approximately $13,000 hidden within

10   the door panels.

11          On March 7th, 2007, Villarreal was talking to Nunez

12   regarding the apprehension of L. Vivar and Castillo.

13   Villarreal advised Nunez that they were only caught with the

14   money and not the quote/unquote shit, because the shit was

15   still hidden within the pallets.

16          Vivar had learned this from calls from L. Vivar and

17   conveyed it to Villarreal.  The narcotics were actually found

18   within the pallets.

19          Nunez told Vivar and Villarreal that the money found

20   in the tractor's panels were left over from a previous seizure.

21          One week later, Juarez, Villarreal, L. Vivar, and

22   Castillo were observed meeting together in El Paso at a local

23   El Paso attorney's office and then at a restaurant.

24          Castillo now admits that he was involved in a

25   conspiracy to possess with the intent to distribute cocaine on

1   the dates set forth in the Indictment.

2              Castillo admits that he agreed to transport the

3   49-kilo load for a fee, and that he was recruited by L. Vivar

4   to assist him in the transportation for the smuggling venture.

5              Castillo admits that the conspiracy involved more than

6   5 kilograms of cocaine.

7              THE COURT:  Mr. Castillo, do you agree with that

8   information, sir?

9              DEFENDANT-CASTILLO:  Yes, sir.

10             THE COURT:  Mr. Castillo, you stand charged in Count 2

11  of the Indictment in the case with the crime of possession of

12  cocaine with a weight of 5 kilograms or more, and with an

13  intent to distribute that substance.

14             To that charge, alleged to have taken place sometime

15  between March 6th of 2007 and March 8th of 2007, do you wish to

16  enter a plea of guilty or not guilty?

17             DEFENDANT-CASTILLO:  Guilty, sir.

18             THE COURT:  Okay.

19             In each of the cases the Court, based upon the plea

20  that you entered, is going to make a finding that the plea that

21  you have entered today -- well, first, that you are capable and

22  competent of entering a plea; that you are aware of the nature

23  of the charges and the consequences of the plea; and that the

24  plea of guilty that you have entered today is a plea that has

25  been entered into freely and voluntarily and knowingly, and I

1    will also accept your plea.

2             I'll find you guilty of the crime to which you have

3    entered the plea, and enter a judgment of guilty.  The Court

4    concludes that there is an independent basis in fact that

5    supports each of the essential elements of the offense.

6             And the next time we will visit will be on Tuesday,

7    March 11, 2008, at 8:00 in the morning.  And that will be for

8    your sentencing hearing.

9             It is possible that you may be interviewed before that

10   time for the preparation of the report to which I referred

11   during the plea colloquy.  If you are interviewed, you are

12   entitled to have your lawyer present at the interview.  If you

13   want him or her there, make sure you let him or her know about

14   it, so that they plan to be there.

15            In addition to the information that you provide in the

16   interview, they will get information about you from whatever

17   sources are available.  You will have a chance to review the

18   report well before the sentencing hearing.  When you have that

19   opportunity, review it carefully.  Make sure it is as accurate

20   as possible.  If you have concerns about its accuracy, let your

21   lawyer know about that, and they will work to try to resolve

22   any of the concerns that you may have.

23            Have you understood everything that we have done

24   today?

25            Mr. Contreras?

```
1              DEFENDANT-CONTRERAS:  Yes, sir.

2         THE COURT:  Mr. Morales?

3         DEFENDANT-MORALES:  Yes.

4         THE COURT:  Mr. Delgado?

5         DEFENDANT-DELGADO:  Yes.

6         THE COURT:  Mr. Ortiz?

7         DEFENDANT-ORTIZ:  Yes, sir.

8         THE COURT:  Mr. Bueno?

9         DEFENDANT-BUENO:  Yes, sir.

10        THE COURT:  Mr. Castillo?

11        DEFENDANT-CASTILLO:  Yes, sir.

12        THE COURT:  Do you have any questions for me right

13   now?

14        Mr. Castillo?

15        DEFENDANT-CASTILLO:  No, sir.

16        THE COURT:  Mr. Bueno?

17        DEFENDANT-BUENO:  No.

18        THE COURT:  Mr. Ortiz?

19        DEFENDANT-ORTIZ:  No, sir.

20        THE COURT:  Mr. Delgado?

21        DEFENDANT-DELGADO:  No, sir.

22        THE COURT:  Mr. Morales?

23        DEFENDANT-MORALES:  No, sir.

24        THE COURT:  Mr. Contreras?

25        DEFENDANT-CONTRERAS:  No, sir.
```

```
1              THE COURT:  Okay.
2              Mr. Contreras and Mr. Castillo, I'm going to let you
3    stay out on bond.  Continue to comply with all the conditions
4    of the bond.  Make sure everything is good and clean.
5              We'll see you on March the 11th and, hopefully, do
6    something that makes sense in light of whatever the information
7    is that I have at that time.
8              Anything else from counsel?
9              Mr. Baker?
10             MR. BAKER:  No, Your Honor.
11             THE COURT:  Ms. Romero-Martinez?
12             MS. ROMERO-MARTINEZ:  No, Your Honor.
13             THE COURT:  Mr. Calhoun?
14             MR. CALHOUN:  No, Your Honor.
15             THE COURT:  Ms. Salome-Smith?
16             MS. SALOME-SMITH:  No, Your Honor.
17             THE COURT:  Mr. Gallegos?
18             MR. GALLEGOS:  No, sir.
19             THE COURT:  Good luck.  We are adjourned.  Thanks.
20             (Proceedings concluded.)
21
22
23
24
25
```

MICHAEL P. NOBLES, CSR

1                        CERTIFICATE

2              I, Michael P. Nobles, Official Court Reporter in

3    and for the Western District of Texas, Registered Professional

4    Reporter, do hereby certify that I reported the above matter in

5    shorthand, and that I later reduced my shorthand notes to

6    typewritten form, and that the above and foregoing is a true,

7    correct, and complete transcript.

8              Signed by me this 26th day of August 2008.

9

10

11

12                         /S/MICHAEL P. NOBLES
                           Official Court Reporter
13                         United States District Court
                           511 E. San Antonio, Courtroom 2
14                         El Paso, Texas 79901
                           Certification No. 3218
15                         Expiration Date:  12/31/2008

16

17

18

19

20

21

22

23

24

25

MICHAEL P. NOBLES, CSR