IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| REY ORTIZ, Reg. No. 17246-180,<br>    Movant, | §<br>§<br>§ | |
| v. | §<br>§ | EP-10-CV-265-PRM<br>EP-07-CR-1965-PRM-1 |
| UNITED STATES OF AMERICA,<br>    Respondent. | §<br>§ | |

## MEMORANDUM OPINION AND ORDER

Movant Rey Ortiz ("Ortiz") seeks relief, through a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence [ECF No. 59], from the one hundred fifty-six month sentence imposed by the Court after he pleaded guilty, pursuant to a plea agreement, to importing fifty kilograms or more of marijuana.[1] Ortiz asserts that his trial counsel provided constitutionally ineffective assistance at his sentencing. In its response to the motion [ECF No. 64], the United States of America ("the Government") argues that Ortiz's allegation is without merit. After reviewing the record and for the reasons discussed below, the Court concludes that Ortiz has failed to establish his entitlement to § 2255 relief. Accordingly, the Court will deny his motion and dismiss his civil cause with prejudice. Additionally, the Court will deny Ortiz a certificate of appealability.

## FACTUAL AND PROCEDURAL HISTORY

On a July evening in 2007, Ortiz entered the United States from Mexico at the Ysleta Port of Entry in El Paso, Texas, driving a 1982 F-150 Ford pickup truck loaded with furniture. During an inspection, a narcotics detector dog alerted to the odor of a controlled substance coming from the furniture. When Customs and Border Protection officers examined the

---

[1] "ECF No." in this context refers to the Electronic Case Filing number for documents docketed in EP-07-CR-1965-PRM-1.

furniture, they discovered non-factory installed compartments which contained two hundred twenty-six tape-wrapped bundles with a total weight of ninety-seven kilograms. The officers probed one of the bundles and extracted a leafy, green substance which field tested positive for marijuana. After waiving his *Miranda* rights, Ortiz confessed that his boss had offered him $500 to drive the truck, which he knew was loaded with marijuana, from Ciudad Juárez, Chihuahua, Mexico, to Socorro, Texas.

After examining the evidence, a grand jury sitting in the Western District of Texas, El Paso Division, returned a two-count indictment against Ortiz charging him with importing fifty kilograms or more of marijuana ("count one"), and possessing with the intent to distribute fifty kilograms or more of marijuana ("count two"). With the indictment, the Government filed notice that it would seek an enhanced punishment based on Ortiz's prior conviction for importing marijuana.[2]

Ortiz's attorney negotiated a plea agreement with the Government. Under its terms, Ortiz agreed to plead guilty to count one of the indictment. In exchange, the Government promised to "move for dismissal of the remaining count(s)" and "not oppose the award of a two-level adjustment for acceptance of responsibility."[3] In the agreement, Ortiz also acknowledged "that as a result of the Government's Notice of Enhanced Punishment, the range of punishment for the ... offense [was] a term of imprisonment of not more than thirty (30) years."[4] He also agreed that the Court would consult the United States Sentencing Guidelines before determining his sentence and that, by entering into the agreement, he waived, with limited exceptions, his right to

---

[2] *See United States v. Ortiz*, EP-01-CR-1149-DB (W.D. Tex. Sept. 27, 2001).

[3] Plea Agreement 1-2 [ECF No. 32].

[4] *Id.* at 2.

appeal or collaterally attack his sentence.

After the Court reviewed with Ortiz the rights that he waived by pleading guilty, the maximum punishment that he faced if the Court accepted his plea, the consequences of his plea, and the terms of the plea agreement, Ortiz affirmed his prior federal conviction and pleaded guilty to count one of the indictment. The Court accepted his plea and referred his case to a probation officer for a presentence investigation report. In the report, the probation officer recommended that the Court begin its sentencing calculus with a base offense level of twenty-four, add two levels for obstruction of justice due to Ortiz's failure to appear at his first plea hearing, and add eight levels because Ortiz's prior convictions for importing marijuana and burglary of a habitation placed him in the career offender category. This calculation gave Ortiz a total offense level of thirty-four, a criminal history category of VI, and an advisory sentencing guideline range of two hundred sixty-two to three hundred twenty-seven months' confinement.

Ortiz's counsel asked the Court to grant downward adjustments for his client's minor role and acceptance of responsibility. He also objected to the characterization of Ortiz as a career offender, and asked the Court to sentence Ortiz outside of the sentencing guidelines range. As a result of these efforts, the Court deducted three levels for acceptance of responsibility and an additional two levels on a motion by the Government, leaving Ortiz's total offense level at twenty-nine with a criminal history category of VI. Thus, his sentencing range, as determined by the Court, was one hundred fifty-one to one hundred eighty-eight months' confinement. The Court ultimately sentenced Ortiz to one hundred fifty-six months' imprisonment followed by ten years' supervised release.

Ortiz timely filed a notice of appeal. After reviewing the record, the attorney appointed to represent him during the appeal moved for leave to withdraw and filed an *Anders* brief.[5] Ortiz did not file a response. The Court of Appeals for the Fifth Circuit granted the motion and dismissed the appeal.[6]

In his instant motion, Ortiz alleges that his counsel provided constitutionally ineffective assistance in three ways. First, he argues that his counsel was ineffective for failing to challenge his characterization as a career offender under sentencing guideline § 4B1.1.[7] He claims that his prior felony conviction in Texas for burglary of a habitation did not qualify as a crime of violence for the purposes of the guideline and he was not, therefore, a career offender. Second, he alleges that his counsel failed to diligently research the Government's notice that it would seek an enhanced punishment based on his prior federal controlled substance conviction. He asserts that this omission unjustly resulted in "qualifying [him] as a career offender."[8] Finally, he maintains that his counsel provided ineffective assistance when he permitted the Court to impose "a sentence greater than necessary" to achieve federal sentencing goals.[9]

## LEGAL STANDARD

*A.    28 U.S.C. § 2255*

After a defendant has been convicted and exhausted or waived any right to appeal, a court

---

[5] *Anders v. California*, 386 U.S. 738 (1967).

[6] *United States v. Ortiz*, No. 08-50730 (5th Cir. June 16, 2009).

[7] U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a) (2007).

[8] Mot. to Vacate 5.

[9] *Id.* at 7.

is normally "entitled to presume that the defendant stands fairly and finally convicted."[10] Accordingly, "'[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'"[11] Typically, before a court will grant relief pursuant to § 2255, the movant must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."[12]

Ultimately, the movant bears the burden of establishing his claims of error by a preponderance of the evidence.[13] A court may deny a § 2255 motion, however, if "the files and records of the case conclusively show that the prisoner is entitled to no relief."[14] When a court finds that the movant is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[15] Thus, the Court has "'broad and flexible power' . . . 'to fashion an

---

[10] *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)).

[11] *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)).

[12] *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

[13] *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

[14] 28 U.S.C.A. § 2255(b) (West 2011); *see also United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence–and not necessarily direct evidence–that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

[15] 28 U.S.C.A. § 2255(b).

appropriate remedy.'"[16]

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal.[17] When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a movant must either (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted.[18] The cause-and-actual-prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal."[19] If the movant does not meet either burden, then he is procedurally barred from attacking his conviction or sentence.[20] This procedural bar does not apply, however, to claims which could not have been raised on direct appeal, such as those alleging ineffective assistance of counsel.[21]

---

[16] *United States v. Stitt*, 552 F.3d 345, 355 (4th Cir. 2008) (quoting *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997); *see also Andrews v. United States*, 373 U.S. 334, 339 (1963) ("[T]he provisions of the statute make clear that in appropriate cases a § 2255 proceeding can also be utilized to provide a . . . flexible remedy."); *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000) ("As an initial matter, we note the broad leeway traditionally afforded district courts in the exercise of their § 2255 authority. . . . This is so because a district court's power under § 2255 'is derived from the equitable nature of habeas corpus relief.'") (quoting *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997)).

[17] *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991).

[18] *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999).

[19] *Gaudet*, 81 F.3d at 589.

[20] *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992).

[21] *See United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992) (stating that the general rule in the Fifth Circuit is that, except in rare instances where the record on direct appeal is adequate to evaluate such a challenge, an ineffective assistance of counsel claim cannot be resolved on direct appeal because no opportunity existed for the parties to develop the record on the merits of the allegations).

B.  *Ineffective Assistance of Counsel*

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions.[22] Moreover, "the right to counsel is the right to the effective assistance of counsel."[23] "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal."[24] To merit relief on an ineffective assistance of counsel claim, a movant must demonstrate both (1) that his "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense."[25] A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective.[26]

The test's performance prong centers on whether counsel's assistance was reasonable, considering all the circumstances at the time of counsel's conduct.[27] In order to obtain relief, a movant must establish "that counsel made errors so serious that counsel was not functioning as

---

[22] U.S. CONST. amend. VI.

[23] *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

[24] *Gaudet*, 81 F.3d at 589 n.5.

[25] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).

[26] *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

[27] *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

the 'counsel' guaranteed the defendant by the Sixth Amendment."[28] In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[29] A deficiency in counsel's performance, even if professionally unreasonable, does not equal ineffective assistance of counsel; the movant must also demonstrate actual prejudice.[30] The test's prejudice prong requires the movant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[31]

With these principles in mind, the Court turns to the merits of Ortiz's claims.

## ANALYSIS

### A.     *Characterization as a Career Offender*

Ortiz first asserts that his counsel was ineffective for failing to challenge the Court's characterization of him as a career offender under sentencing guideline § 4B1.1.[32] He argues that

---

[28] *Id.* at 687.

[29] *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[30] *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.").

[31] *Id.* at 694.

[32] *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a) ("A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a

his prior felony conviction for burglary of a habitation, in violation of Texas Penal Code § 30.02, did not qualify as a crime of violence for the purposes of the guideline. Thus, Ortiz argues, he was not a career offender.

Contrary to Ortiz's claim, his counsel did argue to the Court at sentencing that burglary of a habitation under Texas law was not categorically a crime of violence for the purposes of sentencing guideline § 4B1.1:

> In dealing with the enhancement, Your Honor, we would object to the career offender Guidelines, in that he does not have two prior felony convictions for controlled substances or a crime of violence, [Y]our Honor. We submit that the use of the prior burglary of [a] habitation conviction as the predicate offense for this offense is incorrect, because it is at issue and not categorically a crime of violence, Your Honor. We don't believe the burglary of habitation is a crime of violence.[33]

The Fifth Circuit, however, long ago rejected this argument and determined that burglary of a habitation under Texas Penal Code § 30.02 was categorically a crime of violence for the purposes of sentencing guideline § 4B1.1.[34] Thus, Ortiz cannot demonstrate either that his "counsel's performance was deficient," or that "the deficient performance prejudiced the defense."[35] Moreover, he cannot show that the Court abused its discretion by rejecting his attorney's argument in the instant case.

---

controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.").

[33] Sentencing Tr. 7:9-17 [ECF No. 56].

[34] *United States v. Guadardo*, 40 F.3d 102, 103 (5th Cir. 1994) ("We have held that burglary of a habitation under section 30.02 of the Texas Penal Code constitutes a crime of violence under 18 U.S.C. § 16. *United States v. Cruz*, 882 F.2d 922 (5th Cir. 1989); *United States v. Flores*, 875 F.2d 1110 (5th Cir. 1989). *Cruz* and *Flores* both involved the application of the career offender provisions of [sentencing guideline] § 4B1.1.").

[35] *Strickland*, 466 U.S. at 687.

### B. Failure to Research Notice of Enhanced Penalty

Ortiz also alleges that his counsel failed to diligently research the Government's notice that it would seek an enhanced punishment based on his prior federal controlled substance conviction. He asserts that this omission unjustly resulted in "qualifying [him] as a career offender."[36]

During his plea hearing, Ortiz affirmed his prior conviction for importing marijuana in cause number EP-01-CR-1149-DB in the Western District of Texas.[37] He did not allege in his § 2255 motion any shortcomings or improprieties in this prior drug trafficking conviction that could have become known as the result of diligent research. "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial, we [can find] no merit to these [claims]."[38] Ortiz's assertions are conclusory at best and, as such, fail to present a cognizable ineffective assistance of counsel claim.[39]

### c. Failure to Object to a Sentence Greater than Necessary to Achieve Sentencing Goals

Finally, Ortiz maintains that his counsel provided ineffective assistance when he permitted the Court to impose "a sentence greater than necessary" to achieve federal sentencing

---

[36] Mot. to Vacate 5.

[37] Plea Tr. 38:4-22 [ECF No. 38].

[38] *Barnard v. Collins*, 958 F.2d 634, 642 n.11 (5th Cir. 1992).

[39] *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

goals.[40] This, according to Ortiz, resulted "in a plainly unreasonable sentence under ... 18 U.S.C. § 3553."[41]

A claim of ineffective assistance of counsel at sentencing requires that the movant establish prejudice by demonstrating that the deficient performance of his attorney resulted in an increase in his punishment.[42] In other words, a movant must show "that but for his counsel's error, his sentence would have been significantly less harsh."[43]

In this case, the probation officer recommended an advisory sentencing guideline range of two hundred sixty-two to three hundred twenty-seven months' confinement. Ortiz's counsel raised a litany of objections to the report and made multiple arguments for downward adjustments. He also made a general request for a variance from the sentencing guidelines range. He argued for a sentence reduction from many angles, including factually-based arguments which recognized Ortiz's familial hardships, his history of drug addiction, and his remote criminal history. Many of the arguments implicated the sentencing goals listed in 18 U.S.C. § 3553. After hearing the arguments of both Ortiz's counsel and the prosecutor, the Court deducted three levels for acceptance of responsibility and two levels on the Government's motion. The Court ultimately sentenced Ortiz to one hundred fifty-six months's imprisonment. This sentence was substantially below the sentence suggested by the probation officer. Ortiz cannot now show that, but for his counsel's purported errors, his sentence would have been significantly less harsh.

---

[40] Mot. to Vacate 7.

[41] *Id.*

[42] *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001).

[43] *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) (per curiam).

In sum, since Ortiz has not shown that his counsel provided constitutionally ineffective assistance, he is not entitled to § 2255 relief.

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief.[44] The record in this case is adequate to dispose fully and fairly of Ortiz's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."[45] Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[46] In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted.[47]

---

[44] *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (holding that there was no abuse of discretion in denying a § 2255 motion without a hearing where the movant's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself).

[45] 28 U.S.C.A. § 2253(c)(1)(B) (West 2011).

[46] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

[47] *See* 28 U.S.C.A. § 2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); *see also Lackey*, 116 F.3d at 151 (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *but see United States v. Kimler*, 150 F.3d 429, 431 n.1 (5th Cir. 1998) ("We have decided, however, that the monolithic nature of [Federal Rule of Appellate Procedure] Rule 22(b) in conjunction with Congress's mandate for issue specificity on collateral review embodied in 28 U.S.C. § 2253(c)(3) requires a more express request. In order to obtain appellate review of the issues the district court refused to certify, the petitioner must first make the threshold substantial showing of the denial of a constitutional right. *See* 28 U.S.C. 2253(c)(2).

Although Ortiz has not yet filed a notice of appeal, this Court nonetheless must address whether he is entitled to a certificate of appealability.[48]

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[49] In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[50] To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[51] Here, Ortiz's motion fails because he has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court finds that it should deny Ortiz a certificate of appealability.

---

Only after clearing this hurdle may the petitioner proceed to brief and we review the merits of the rejected issues.").

[48] *See* 28 U.S.C.A. § 2255 PROC. R. 11(a) (West 2011) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."); *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (explaining that it is appropriate for a district court to address *sua sponte* the issue of whether it should grant or deny a certificate of appealability, even before one is requested).

[49] 28 U.S.C.A. § 2253(c)(2).

[50] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings).

[51] *Slack*, 529 U.S. at 484.

## CONCLUSION AND ORDERS

For the reasons stated, the Court concludes that it should deny Ortiz's motion and dismiss his civil cause. The Court further concludes that Ortiz is not entitled to a certificate of appealability. Accordingly, the Court enters the following orders:

1. Movant Rey Ortiz's *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence [ECF No. 59] is **DENIED** and his civil cause is **DISMISSED WITH PREJUDICE**.

2. Movant Rey Ortiz is **DENIED a CERTIFICATE OF APPEALABILITY**.

3. All pending motions in this cause, if any, are **DENIED AS MOOT**.

**SO ORDERED.**

SIGNED this 28 day of **June, 2011**.

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE